John A. S. LANE, Jr., d/b/a
FORTUNE CAPITOL COMPANY *v.*
Eugene M. PFEIFER, III, et al

77-188                                    568 S.W. 2d 212

Opinion delivered July 17, 1978
(In Banc)

*Friday, Eldredge & Clark,* by: *Michael G. Thompson,* for appellant.

*Eichenbaum, Scott, Miller, Crockett & Darr,* by: *Gary F. Liles,* for appellees.

BRUCE H. SHAW, Special Justice. This action was originally brought by way of Interpleader filed by Southwestern Bell Telephone Company (hereinafter referred to as "Bell"). Named as parties to the action were those individuals and organizations having a property or contract interest in property lying East and West of what is now Woodson Road, extended from 65th Street to Big Oak Lane, Little Rock, Arkansas. From a decision adverse to the Appellant this appeal is taken.

At one time the property lying adjacent to and East of what is now known as Woodson Road was acquired by Appellees, E. M. Pfeifer, Jr., E. G. Levy and James B. Pfeifer (hereinafter collectively referred to as "Pfeifers"). On the West side of Woodson Road Pfeifers own the southernmost portion followed to the North by a large tract owned by Bell, with Mr. and Mrs. Dave Cox (hereinafter referred to as "Cox") owning the Northernmost section of land which is the Southwest intersection of 65th Street and Woodson Road.

Lewben Associates (hereinafter referred to as "Lewben"), an Oklahoma general partnership, purchased the South Half of the original Pfeifer tract on the East side of Woodson Road. Lewben intended to develop this property for residential purposes, but at that time the property had no access to 65th Street. Pfeifer, Bell and Cox, the parties owning the property on the West side of what is now Woodson Road, were also interested in seeing the road developed

and willing to pay their pro rata share of the cost of construction.

A purchase contract was entered into between Pfeifers and Lewben for Lewben to purchase the tract which it now owns. In the Contract of Sale with Lewben, Pfeifers agreed to reimburse Lewben three-fourths of the cost of construction since Lewben's frontage on Woodson Road would be approximately 25% of the total frontage. Lewben obtained an estimate showing it would cost $24,258.88 to build Woodson Road from 65th Street to Big Oak Lane. Bell and Cox entered into letter agreements with the Pfeifers whereby Bell and Cox would reimburse the Pfeifers for their pro rata share of the cost of construction or the road, based on their respective frontages. In May, 1973, Lewben entered into a contract for construction of Woodson Road with Newcomb-West Construction Company (hereinafter referred to as "Newcomb-West").

In October, 1973, Appellant, John Lane, d/b/a Fortune Capitol (hereinafter referred to as "Fortune"), a Missouri general partnership, entered into simultaneous contracts of sale with the Pfeifers and Lewben for the purchase of their respective lots comprising the entire East side of Woodson Road from 65th Street to Big Oak Lane, Pfeifers' interest owning the North Half of the property fronting on Woodson Road, and Lewben's interest owning the frontage on the South Half of Woodson Road and immediately South of the property owned by Pfeifers. Fortune did not wish to become involved in the actual construction of Woodson Road, but wished to insure that it was, in fact, built. Both of the contracts of sale between Fortune and Pfeifers, and Fortune and Lewben, had a provision for an escrow in the vent that construction of the road and acceptance thereof by the City of Little Rock had not been accomplished by closing. Each contract also provides for earnest money paid by Fortune to be applied on the purchase price at closing, or in the event of forfeiture by Fortune, the terms of the contracts provided the earnest money would be forfeited as liquidated damages. The two contracts executed by Fortune wit Pfeifers and Lewben, respectively, anticipated joint closings on both parcels so that Fortune would assume ownership of the entire Eastern frontage of Woodson Road at the date of closing.

On the date of closing Fortune refused to complete its contract purchasing the Lewben property, thereby forfeiting the earnest money it had paid for that contract, but did close on the contract to purchase the Pfeifer property, the Northern Half of the Eastern frontage of Woodson Road, and paid $190,000.00. On the date of closing, April 10, 1974, Woodson Road was not completed. Pursuant to the requirement of escrow provision in the contract between Fortune and Pfeifers, the sum of $18,200.00 was escrowed out of the $190,000.00 purchase price, thereby decreasing the amount of money received by the Pfeifers on the date of closing to $171,800.00. The Escrow Agreement, executed at the time of closing, had been prepared by the attorney for Fortune. This Escrow Agreement contained the following provisions:

"1. Escrowee hereby acknowledges the receipt of the sum of $18,200.00 from Seller, to be held and delivered by Escrowee under and pursuant to the following terms and conditions:

A. In the event Seller shall have completed the dedication to public use, acceptance of such dedication by the appropriate governmental authorities, and the construction of the extension of Woodson Road along the west side of the property this date conveyed from Seller to Buyer (within a 25 foot wide easement) in accordance with the requirements of the appropriate governmental authorities, on or before 135 days from the date of this agreement, then immediately upon the completion of all of such items and the displaying to Escrowee of evidence of completion and acceptance of same by the appropriate governmental authorities, Escrowee shall disburse said sum of $18,200.00 to Seller.

B. In the event that 135 days from the date of this agreement, said roadway has not been dedicated, accepted by the appropriate governmental authorities and constructed in accordance with the requirements of the appropriate governmental authorities, then immediately following the expiration of said 135 days period, Escrowee shall deliver said sum of $18,200.00 to Buyer and Seller shall thereupon have no further responsibility

or obligation to Seller (sic) for the construction of said roadway."

Upon the expiration of 135 days from the date of the Escrow Agreement, Woodson Road not being completed, Fortune withdrew the funds from the escrow. At the time of withdrawal, no notice was given to Pfeifers, and they were not given the opportunity to object to the withdrawal.

On October 10, 1974, the road being virtually complete, except for approximately $300.00 worth of work necessary to effect formal acceptance by the City, Newcomb-West requested final payment from Lewben for the road. Lewben contacted Fortune and requested the $18,200.00 withdrawn from the escrow to be applied to the cost of the road. Fortune refused, stating that since the 135 days set forth in the Escrow Agreement had expired, it was entitled to keep the $18,200.00 under the terms of the Escrow Agreement.

The present action was then begun by Bell interpleading its estimated share of the construction cost of the road into the registry of the Court. By miscellaneous and appropriate pleadings of Newcomb-West, Lewben, Pfeifers, Cox and Fortune, each party sought judgment against the other for their proportionate share of the cost of construction of Woodson Road with Pfeifers making claim against Fortune for the $18,200.00 withdrawn from the escrow.

The Chancery Court, after allowing oral testimony concerning the $18,200.00, found that it was the intent of the parties to the Escrow Agreement dated April 10, 1974, that the sum which was escrowed was to be used for the construction of the extension of Woodson Road. The lower court found the intent was to insure to Fortune that a road would be built, and the primary motive of the escrow was not forfeiture, but completion of the road. Fortune suffered no damage in any way by virtue of the road not being completed. The escrow fund was Pfeifers' money, not Fortune's, and it was to guarantee the road would be built. Judgment was entered as prayed for by the pleadings so that each party was to pay his proportionate share of the cost of construction of the road and for Pfeifers against Fortune for the $18,200.00.

The only part of the Judgment being appealed is the Judgment for Pfeifers against Fortune.

Appellant raises only one issue in this Court as follows:

"The Court erred in allowing parol evidence to vary the expressed terms of the Escrow Agreement of April 10, 1974."

It is well recognized that parol evidence cannot be introduced to change or alter a contract in writing. *Equitable Discount Corp.* v. *Trotter*, 233 Ark. 270, 344 S.W. 2d 334 (1961). The test of admissibility is whether the evidence offered tends to alter, vary, or contradict the written contract, or only to prove an independent, collateral fact about which the written contract was silent. In the former instance the testimony is inadmissible; in the latter, it is competent and proper. *Loe* v. *McHargue*, 239 Ark. 793, 394 S.W. 2d 475 (1965). When testimony is offered to prove an independent, collateral fact about which the written contract is silent, the parol evidenie rule is not applicable, and, therefore, an exception to the rule is unnecessary to allow the testimony to be presented. Upon considering all of the evidence in this matter and the contracts hereto, it is clear that the testimony offered and received into evidence by the Chancellor covered a point of the agreement between the parties upon which the Escrow Agreement was silent. Therefore, the oral testimony does not contradict the terms of the contract and is not excluded by the parol evidence.

As quoted above, the Escrow Agreement did not address itself to several items; the purpose of the escrow, what would happen in the event of partial completion of the road, or what the parties were to do with the funds in the event they were withdrawn from the escrow at the expiration of 135 days. In order to show the agreement of the parties not reflected by the Escrow Agreement, the Court properly allowed Appellees to introduce at the trial oral testimony showing the Agreement as actually entered into by the parties.

The testimony shows that if Woodson Road was not completed and accepted by the City of Little Rock within 135

days, it was the intent and purpose of the parties that Fortune would receive the $18,200.00 from escrow and pay for completion of the road itself. The oral testimony further shows that the purpose of the escrow was to insure the completion of the Woodson Road and whoever withdrew the money from escrow, Fortune or Pfeifers, was to apply that money to the construction of the road and the cost thereof. The actual dollar figure, $18,200.00, was agreed upon because Fortune was buying the road in place, and Fortune would, therefore, pay only one-quarter of the estimated cost of construction. Three-fourths of the cost of construction, $18,200.00, was then escrowed to insure its availability from Appellees at the time of completion of the road.

It is significant to note that the $18,200.00 placed in escrow was part of the $190,000.00 purchase price paid by Fortune. The Contract for construction of the Woodson Road was between Lewben and Newcomb-West. Neither of the parties to the road construction contract were parties to the Escrow Agreement, and, therefore, neither Fortune not Pfeifers had any control over the progress of the construction of the road. Consequently, the requirement that the road be completed within 135 days was beyond the control of any parties of the Escrow Agreement.

The Escrow Agreement, unlike the other contracts entered into between the parties involved in this litigation, has no provision concerning liquidated damages. The absence of a liquidated damages provision, in this agreement, considering, to the contrary its presence in the other contracts, indicates that the funds escrowed were not to be considered as liquidated damages by the parties thereto. The Escrow Agreement is silent as to what should be done with the escrow funds after they are withdrawn from escrow by either Buyer or Seller after the 135 days. The Chancery Court correctly held that since the Escrow Agreement did not cover this point, the oral testimony was proper and did not vary the terms of the contract since the Contract was silent on this point. *Loe* v. *McHargue,* supra.

It should also be noted that since the Escrow Agreement does not provide for payment of liquidated damages, assum-

ing Fortune would be entitled to retain the $18,200.00, an unbargained-for bonus and profit from the transaction in question, the Escrow Agreement would provide for a penalty which this Court has consistently refused to allow. *McIlvenny v. Horton,* 227 Ark. 826, 302 S.W. 2d 70 (1957). This is particularly true in this instance where Fortune suffered absolutely no loss or damage by virtue of the road not being completed within the 135 days.

It is our conclusion, therefore, that the decree of the trial court should be, and it is, hereby affirmed.

Affirmed.

CONLEY BYRD, J., and JOHN W. MANN, JR., Sp. J., dissent.

FOGLEMAN and HICKMAN, JJ., disqualified and not participating.