## DON GILSTRAP BUILDERS, INCORPORATED *v.* Johnny JACKSON, Jr. and Ollie Fay JACKSON, His Wife

CA 80-89                                        601 S.W. 2d 270

Court of Appeals of Arkansas
Opinion delivered July 2, 1980
Released for publication July 8, 1980

*Ben Rice*, for appellant.

*Dodds, Kidd & Ryan*, by: *Donald S. Ryan*, for appellees.

James H. Pilkinton, Judge. Mr. and Mrs. Johnny Jackson of Jacksonville contracted with Don Gilstrap Builders, Inc., of Pulaski County, Arkansas, for the construction of a residence. The contract was prepared by Gilstrap by using a printed form, intended for an entirely different type of transaction, which the builder modified by striking some of the printed form and adding other provisions in writing. The contract price for the construction of the Jackson home was $42,900.00.

After construction was commenced, certain "extras", not mentioned in the contract, were discussed by the parties; and, the builder claims were added. Mr. and Mrs. Jackson paid Gilstrap the original contract price in full, but appellant sued them for the so-called extras alleged to be in the sum of $1,343.72. The Jacksons denied that they owed the builder any additional sum, and cross-complained for damages. The counterclaim alleged defective workmanship in the construction of the residence.

A jury was waived and the circuit judge, sitting as a jury, found for Gilstrap in the amount of $776.58 on his complaint for the extras. The evidence showed and the circuit court determined that the parties had entered into a compromise of this issue as to the extras, and were now bound by their agreement of $776.58. There seems to be no dispute concerning this item on appeal. The circuit court also found for the Jacksons on their counterclaim and fixed their damages at $5,875.00 less $776.58 which appellees owed appellant for the extras. Gilstrap has appealed, and the issue here is whether

the findings of the circuit court are clearly against the preponderance of the evidence. Ark. Rules of civil Procedure, Rule 52.

I

Appellant first contends that the court erred in allowing expert testimony as to a trade term. As mentioned, the contract between these parties was on a form filled out by the appellant. Under *Garages*, it says:

"Garage to be left unfinished."

The circuit court found that this term of the agreement was both ambiguous and involved a technical term and the trial court allowed a disinterested expert builder, James Mackey, to define what the term "unfinished garage" means in the building trade in the area involved. Over the objection of the appellant, Mr. Mackey testified that in the trade or building business the term "an unfinished garage" would mean a garage structure sheetrocked to sides and ceiling, not taped and bedded.

The initial determination of the existence of an ambiguity rests with the court and if ambiguity exists, then parol evidence is admissible and the meaning of the term becomes a question for the fact finder. *Fort Smith Appliance and Service Company* v. *Smith*, 218 Ark. 411, 236 S.W. 2d 583 (1951); *C & A Construction Company, Inc.* v. *Benning Construction Company*, 256 Ark. 621, 509 S.W. 2d 302 (1974); *Gibson* v. *Heiman*, 261 Ark. 236, 547 S.W. 2d 111 (1977). It is also well settled that a contract must be construed against the party preparing it. *Prepakt Concrete Company* v. *Whitehurst Bros., Inc.*, 261 Ark. 814, 552 S.W. 2d 212 (1977). Under the circumstances shown by this record, we find no error in the action of the court in admitting the expert testimony involved. Different trades, in addition to coining words of their own, also appropriate common words and assign to them new meanings. In some types of cases, and under some circumstances, one cannot understand accurately the language of such trades without knowing the particular meanings attached to the words which they use. It is often said that a court in construing the language of the

parties must put itself into the shoes of those making the contract. That alone would not suffice in some cases. The courts must also understand and adopt their vernaculars. *Hurst* v. *Lake and Company*, 141 Or. 306, 16 P. 2d 627, 89 A.L.R. 1222. If "usage" was not admissible evidence, then no dictionary would be admissible to aid a court or a jury. 3 Corbin, *contracts*, § 555 (1960 and supp. 1971).

In the case before us had the appellant wished to make it clear as to what extent the garage would be left unfinished, it should have been stated so in definite terms in the form contract which appellant prepared. Under the circumstances here, and as used in this contract, "Garage to be left unfinished" became a technical term. there would be no way for anyone to know, who was not familiar with the use of this term in the trade, what this contract means. It certainly was intended to mean something more than simply that construction on the garage was to commence and, at some point before the garage is finished, construction was to cease. We hold that the court properly allowed expert testimony on this issue.

## II

Appellant also contends that the judgment was clearly erroneous and was not supported by credible evidence. We do not agree.

Rule 52 of the Arkansas Rules of Civil Procedure has altered the standard of review on appeal as to cases tried by a circuit judge sitting as a jury. *Taylor* v. *Richardson*, 266 Ark. 447, 585 S.W. 2d 934, (1979), at Page 449, points out that in accordance with Rule 52, *supra:*

> "Findings of fact shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

The circuit judge made certain specific findings of fact

from the bench and cited what he considered to be supportive testimony as follows:

"On the counterclaim I'll be frank in saying that I was more impressed by testimony from the thirty year experienced journeyman brick layer than by any other witnesses who appeared here today. I think that man knows what he is talking about. And, he testified that to get this brickwork in shape it would cost $4000.00 upwards. That testimony is considered with the testimony of James Mackey who placed a price of four thousand five hundred dollars to get the brickwork in shape. So, they were essentially testifying the same thing. I was further impressed with Mr. Mackey as a contractor. He's licensed and bonded."

The testimony of James Williams on cross-examination shows the following:

Q. How many bricks were used in that house?

A. . . . around 12 or 13,000, but to be exact, I don't know.

Q. Is your estimate of $4000.00 based on replacing all the bricks?

A. No, if they were going to try to correct the brickwork, that is messed up there, it would cost them that because it would cost them to tear it down which is harder than laying them back.

Q. How many bricks would have to be replaced?

A. . . . it would be better if you just knocked them all off and buy new brick and rebrick the house.

Q. Just take all the brick off the house and redo it?

A. And rebrick it over. (T. 157)

James Mackey, who is a licensed and bonded remodel-

ing contractor, testified that it would cost $6,400 to repair all of the various defects in the house. He said that it would cost $4,500 to correct the brickwork alone. In connection with that undertaking, Mr. Mackey said:

> ... The cost you are getting into in the brick is taking the brick down. I didn't see any way to redo the brick with them standing like they are. I didn't see no way that I could take a brick mason out there and redo it. ... it would have to be taken all down, and it would all have to be cleaned and then re-laid.

We find the above and other evidence in the record to be substantial and not based on conjecture. It is apparent that the trial court found the testimony of Mr. Williams and Mr. Mackey to be credible evidence.

Affirmed.