**B. F. SHAMBURGER *v.* THE UNION BANK OF BENTON**

CA 82-356                                   650 S.W.2d 596

Court of Appeals of Arkansas
Opinion delivered May 25, 1983

*R. J. Brown, P.A.,* by: *Lisa A. Kelly,* for appellant.

*Boswell & Smith,* by: *Floyd Clardy,* for appellee.

LAWSON CLONINGER, Judge. This case involves the construction of a guaranty agreement. Appellee, The Union Bank of Benton, made a loan to Mr. and Mrs. James A. Croom, the principal obligors. The promissory note was dated June 30, 1973, in the amount of $10,000 and was due December 17, 1973. The loan was secured by a buy-back agreement with appellant, B.F. Shamburger and W. A. Northern. When the buy-back agreement expired, an extension of the promissory note was entered into on September 5, 1974. On the same date, Union Bank sought and obtained from Mr. Shamburger a guaranty agreement. This guaranty agreement was entered into on the same day that the extension of the promissory note was signed.

The Crooms made several payments on the note after the extension and guaranty were signed but eventually defaulted. Suit was brought against the Crooms and after execution and garnishment proceedings were unsuccessful, this present lawsuit was filed against Shamburger as guarantor of the note. From a judgment in favor of Union Bank, Shamburger now brings this appeal.

His first point for reversal is that the trial court erred in granting judgment against Mr. Shamburger because the

guaranty agreement was invalid for lack of consideration. Mr. Shamburger argues that at the time he entered into the guaranty agreement, he had sold all of his interest in King's Enterprises. The underlying obligation created by Mr. Croom in 1973 was to finance the purchase of 5,000 shares of stock in King's Enterprises. At that time, Mr. Shamburger was one of the shareholders in King's Enterprises. The $10,000 promissory note executed by Mr. and Mrs. Croom was secured originally by Croom's 5,000 shares of stock and by a re-purchase agreement entered into by Mr. Shamburger and Mr. Northern. The re-purchase agreement expired after six months. The bank then approached Mr. Shamburger about entering into the guaranty agreement. Appellant argues that the record fails to show any legitimate consideration or benefit derived by Mr. Shamburger in exchange for his signature on the Union Bank guaranty.

A guaranty contract may be supported by sufficient consideration so long as there is a benefit to a principal debtor or guarantor, or of a detriment to the guarantee. *Wilson Brothers Lumber Company* v. *Furqueron*, 204 Ark. 1064, 166 S.W.2d 1026 (1942). A promise to forbear a suit or an agreement to extend the time of a payment of a debt is a sufficient consideration. *Wilson Brothers Lumber Company, supra.*

In this case, the guaranty agreement and the agreement to extend the note bear the same date. There was testimony to indicate that the note was based on the guaranty agreement signed by Mr. Shamburger. Hence, we find evidence to support a finding that there was sufficient consideration to support the guaranty agreement.

Secondly, appellant argues that the principal obligors have not exhausted all their legal efforts as required in the guaranty agreement. Appellant sought to have his liability limited by expressly stating in the guaranty agreement that Union Bank should exhaust all legal remedies before seeking judgment against the guarantor. Union Bank still had possession of the 5,000 shares of stock in King's Enterprises as collateral for the note. Appellant argues that since Union Bank never attempted to sell the stock which it

had possession of, it has not exhausted all the legal remedies available to it.

The rule in Arkansas with respect to an interpretation of a guaranty agreement is that the guarantor is entitled to have his undertaking strictly construed and he cannot be held liable beyond the strict terms of his contract. *Lee v. Vaughn*, 259 Ark. 424, 534 S.W.2d 221 (1976); *National Bank of Eastern Arkansas* v. *Collins*, 236 Ark. 822, 370 S.W.2d 91 (1963). Further, where a guarantor attaches a certain condition or conditions to his agreement, the failure of a creditor to strictly comply with any condition invalidates the guaranty. *Lee v. Vaughn, supra.*

Mr. Joe D. Powers, president of Union Bank of Benton, testified at the hearing that when the buy-back agreement expired, he talked with appellant and Mr. Northern at which time they wanted to substitute a new corporate buy-back agreement rather than an individual buy-back agreement. Mr. Powers testified he wouldn't accept the corporate buy-back agreement because he felt that the corporation had little net worth. Further he testified that, in the meantime, Mr. Croom's attorney paid approximately $3,000 on the loan. The attorney had received this money on behalf of the Crooms when the company was sold to the national corporation. There is uncontradicted evidence in the record that the stock in the company was worthless, and we find no error in the trial judge's finding that Union Bank had exhausted all of its legal efforts.

Finally appellant argues that the amount guaranteed has already been paid. The guarantor, Mr. Shamburger, agreed to be liable on the note of Crooms "to the extent of $6,727.27." Appellant now contends that this term meant that when the principal obligors, the Crooms, paid this amount, his obligation on the guaranty was discharged. Although the trial judge never specifically found that this term in the contract was ambiguous, parol evidence was presented at trial to determine the intention of the parties with respect to the provision. Parol evidence is admissible to resolve an ambiguity in a contract to determine what particular meaning the parties intended the ambiguous

provision to have. *Arkansas Rock & Gravel Company* v. *Chris-T-Emulsion Company,* 259 Ark. 807, 536 S.W.2d 724 (1976); *Gilstrap* v. *Jackson,* 269 Ark. 876, 601 S.W.2d 270 (Ark. App. 1980). At trial, the president of Union Bank testified that the language was meant to limit Shamburger's obligation to $6,727.27. Mr. Shamburger testified that he understood the provision to mean that once Mr. and Mrs. Croom had paid $6,727.27, his liability under the guaranty agreement was discharged.

This particular issue was a question of fact for the trial judge, and on appeal, this court affirms the decision of the trial judge unless his decision is clearly erroneous. Arkansas Rules of Civil Procedure, Rule 52. We find that the trial judge's decision was not clearly erroneous on this issue and affirm his holding.

GLAZE, COOPER and CORBIN, JJ., dissent.

TOM GLAZE, Judge, dissenting. The majority decision in this case is a clear rejection of the tenets applicable to a guarantor's liability which this court followed in the recent case of *Moore* v. *First National Bank of Hot Springs,* 3 Ark. App. 146, 623 S.W.2d 530 (1981). In *Moore,* the majority court adhered to the established rule long followed by our Supreme Court that a guarantor is entitled to have his undertaking *strictly construed* and that he cannot be held liable beyond the strict terms of his contract. Citing the case of *National Bank of Eastern Arkansas* v. *Collins,* 236 Ark. 822, 370 S.W.2d 91 (1963), we stated the rule as follows:

> A guarantor, like a surety, is a favorite of the law, and his liability is not to be extended by implication beyond the express terms of the agreement or its plain intent.

*Moore* v. *First National Bank of Hot Springs,* 3 Ark. App. at 150, 623 S.W.2d at 533.

The Supreme Court's adoption of the rule that requires a strict construction of a guarantor's obligation is consistent with Arkansas contract law that requires any ambiguity in a contract to be construed against the one who prepared the

instrument. *See Barton* v. *Perryman,* 265 Ark. 228, 577 S.W.2d 596 (1979).

In the instant case, the majority court recognized that the trial judge admitted parol evidence in an effort to determine the meaning of the terms "to the extent of $6,727.27" inserted in the guarantee agreement. Undoubtedly, those terms were ambiguous; yet the majority, by its opinion, has sanctioned the trial court's construction of terms against the guarantor instead of the Bank which prepared the agreement.

Because I am of the strenuous opinion that the majority court's decision is contrary to well-established guarantor and contract law, I dissent.