**MONTWOOD CORPORATION, formerly known as Arrow Development Co., Inc., Appellant,**

v.

**HOT SPRINGS THEME PARK CORPORATION, Appellee.**

No. 84–2008.

United States Court of Appeals, Eighth Circuit.

Submitted March 26, 1985.

Decided June 28, 1985.

McMillian, Circuit Judge, dissented with opinion.

Don F. Hamilton, Little Rock, Ark., for appellant.

Robert K. Walsh, Little Rock, Ark., for appellee.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

This case involves a dispute over back rents after Montwood Corporation first leased and then sold a six-coach, launched-loop amusement ride (the "Roaring Tornado") to the Hot Springs Theme Park Corporation. Montwood and Hot Springs disagreed whether the sales price included back rents owed on the lease. The district court,[1] finding that the written contract evidencing the sale was ambiguous, allowed Hot Springs' president and manager to describe the negotiations involved in the sale. After a jury verdict, judgment was rendered for Hot Springs. Montwood appeals, arguing primarily that the district court should not have allowed the parol evidence. We affirm the judgment of the district court.

In 1980, the Hot Springs Theme Park Corporation leased for ten years an elaborate amusement ride from Montwood Corporation. Unfortunately, Hot Springs had business problems, failed to make full payments to Montwood, and by June 1982 owed nearly $289,000. Since Montwood wanted out of the amusement park ride business, the parties then negotiated the sale of the ride to the park. On June 10, 1982, Montwood and Hot Springs executed an instrument releasing Hot Springs from certain obligations under the lease, and

---

1. The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas.

Montwood executed a bill of sale of the ride to the H.S. Ltd. Partnership, a somewhat nebulous entity [2] apparently created to facilitate the purchase, for $500,000.[3] The documents were prepared by Montwood's vice-president, Donald L. Thomas, and were reviewed and approved by Montwood's in-house lawyers. After Montwood was paid the $500,000, it claimed Hot Springs still owed it additional back rent. Hot Springs, however, claimed that the $500,000 price included the back rent owed.

Montwood then brought suit on the original lease. Hot Springs replied that the instruments of June 10 voided that original agreement. The crucial paragraph appears in the "Mutual Release":

> Subject to execution by Hot Springs, Montwood agrees that the Lease is cancelled and hereby releases Hot Springs from any continuing obligations under the Lease, and agrees to make no claims against Hot Springs for rental payments under the Lease which would apply to the period following the date of this release.

It has been Montwood's constant position that this provision of the release does not affect the past rents owed and, thus, that it was entitled to judgment as a matter of law on the original lease. The district court, however, denied Montwood's motions seeking such and allowed witnesses for Hot Springs to testify about the sale of the ride. Paul Burge and Doyle Wolfe, president and manager, respectively, of the park at the time of the sale, testified that inclu-

sion of the back rents in the sales price was specifically negotiated and agreed to by Montwood. Burge also testified that he had not seen the documents before the June 10 meeting and did not discuss their language with Thomas before they were executed. Thomas testified that he purposefully did not bring up the question of the past due rents at the meeting until the documents were executed and the $500,000 was transferred to Montwood.

At the conclusion of the trial, a special interrogatory was posed to the jury: "Do you find by a preponderance of the evidence that the contract of sale included the past due rent payments in the purchase price of the ride?" Following its answer in the affirmative, judgment was entered for Hot Springs. Montwood appeals, arguing primarily that admission of the testimony about the negotiations violated the parol evidence rule.

### I.

■ The parties agree that the law of Arkansas applies in this diversity case. In Arkansas, in a suit upon a written contract, the parol evidence rule "requires, in the absence of fraud, duress, mutual mistake, or something of the kind, the exclusion of all prior or contemporaneous, oral or written evidence that would add to or vary the parties' integrated written contract, which is unambiguous." *Walt Bennett Ford, Inc. v. Dyer*, 4 Ark.App. 354, 631 S.W.2d 312, 313 (1982). The rule gives stability to written contracts, *Arkansas Rock & Grav-*

---

**2.** Paul Burge, president of the park at the time of the sale, stated during cross-examination at trial that the partnership was not a legal entity and agreed that "[i]t was just a name * * * pulled out of the air to make it look like it was [a] limited partnership." Neither party argues that the use of the partnership bears on the issues before us.

**3.** There was much discussion at trial and now before this court whether this was a fair price. Apparently at one point, $800,000 was discussed as a purchase price for the ride. Hot Springs, however, did not have that much money. There was testimony that it would have cost Montwood $300,000 to $400,000 to take the ride down and put it back together somewhere else,

plus an additional $40,000 to $100,000 for transportation. Montwood points out that at the time of the sale it could have "obtain[ed] a judgment for the entire balance of the rent owed on the ten year lease which, in effect, either would have put Appellee out of business or in bankruptcy." However, as Montwood's vice-president stated in deposition testimony, had such action been taken Montwood would have had "little or no chance of collecting anything under those circumstances." None of this evidence bears directly on the specific legal issues before us, but was, of course, properly a part of the context of the parol evidence, once the district court determined such evidence was admissible.

*el Co. v. Chris-T-Emulsion Co.*, 259 Ark. 807, 536 S.W.2d 724, 727 (1976); but there may be situations where the language of the contract itself is so ambiguous and uncertain, *see Blount v. McCurdy*, 267 Ark. 989, 593 S.W.2d 468, 469–70 (Ct.App. 1980), or simply silent about an independent, collateral fact involved in the transaction which it evidences, *see Lane v. Pfeifer*, 264 Ark. 162, 568 S.W.2d 212, 215 (1978), that parol evidence should not be excluded. The question is whether such exceptions to the rule should apply to the case before us.

Montwood simply urges that the provision of the contract in controversy is clear and unambiguous. Focusing on that portion of the document which releases Hot Springs from liability for payments "which would apply to the period following the date of this release," Montwood argues that this clause "is not mere surplusage," that "[t]hus, those lease payments due and owing *prior* to the release date are specifically excluded," and that such exclusion is "expressly provide[d]." There is, of course, no specific or express exclusion of such payments.[4] Rather, Montwood can properly argue only that the *implication* of the contested clause is that prior payments were still due and payable.

■ We believe, however, that, as a matter of law, the correct implication to be drawn from the contractual language was so uncertain that the district court properly found that other evidence was needed to determine the meaning of the contract. The release recites as its purpose, point-blank and without reservation, that "the parties desire to dissolve their contractual relationship under the Lease" and does expressly state in the contested paragraph that upon execution Hot Springs is released "from *any continuing* obligations under the Lease" (emphasis added). The document leaves unclear whether this language refers only to payments that would

become due after the execution of the release or, in addition, to payments *already* due but which Hot Springs, until the release, continued to be obliged to pay. In the presence of such ambiguity, parol evidence is admissible. *Shamburger v. Union Bank*, 8 Ark.App. 259, 650 S.W.2d 596, 598 (1983). To expressly provide for the release of future rents does not equate with or create a non-release of back rents. To so provide for future rents alone is simply to remain silent as to back rents. As noted above, however, in the face of such contractual silence, parol evidence becomes admissible. *See Younger v. Thomas International Corp.*, 275 Ark. 327, 629 S.W.2d 294, 298 (1982); *Lane*, 568 S.W.2d at 215; *Gallion v. Toombs*, 268 Ark. 955, 597 S.W.2d 842, 843 (Ct.App.1980).

■ Further, we note that the instrument executed on June 10 contained no merger clause (that is, a clause in the contract stating that all agreements have been "merged" into the written instrument, hence not leaving as part of the contract any terms not written there). While Montwood is correct in asserting that the absence of such a clause does not preclude application of the parol evidence rule, nonetheless, such absence is relevant in determining whether the parties intended to integrate their entire agreement into the document involved in the case. *See, e.g., Walt Bennett Ford, Inc.*, 631 S.W.2d at 313.

While Montwood cites us to numerous Arkansas cases in which the parol evidence rule was applied, without exception those cases begin by finding the contract at issue clear and unambiguous. *See, e.g., Green v. Ferguson*, 263 Ark. 601, 567 S.W.2d 89 (1978); *Miller v. Dyer*, 243 Ark. 981, 423 S.W.2d 275 (1968); *Brown v. Aquilino*, 271 Ark. 273, 608 S.W.2d 35 (Ct.App.1980). In distinction, here the district court found as a matter of law that such ambiguity existed that parol evidence was admissible to

---

**4.** Indeed, Thomas admitted this on cross-examination at trial:

 Q   Is there anything in the Mutual Release * * that even talks about expressly the past due receivables that are at issue in this case?

 A   [Mr. Thomas] No, it doesn't.
 Q   It doesn't mention it at all?
 A   No.

aid the jury in its determination of the meaning of the contract. *See Gilstrap v. Jackson,* 269 Ark. 876, 601 S.W.2d 270, 271 (Ct.App.1980). We cannot conclude that this was error. In fact, Montwood itself appears to recognize the need of such evidence when it claims the corporate records of Hot Springs support its position. Montwood exclusively prepared the documents at issue. It will not now be heard to complain of the evidence allowed at trial to dispel the ambiguity and uncertainty it created.

## II.

■■■ Montwood also argues that even if the parol evidence was admissible, the fact it *was* admitted means that part of the sales contract was oral and thus in violation of the statute of frauds. It relies in its argument on section 1–206 of the Uniform Commercial Code. The conditions of that section, however, were met by the bill of sale of June 10.[5] Further, even if we were to find that the transaction fell outside the U.C.C., it is undisputed that Hot Springs

paid Montwood for the ride moments after the documents of June 10 were executed and that Montwood accepted payment. Under the common law of Arkansas, as well as under the U.C.C., partial payment will take the contract out of the statute of frauds. *See Talley v. Blackmon,* 271 Ark. 494, 609 S.W.2d 113, 115 (Ct.App.1980); Ark.Stat.Ann. § 85–2–201(3)(c) (1961). Having accepted payment, Montwood cannot now argue that the contract of June 10 was unenforceable.[6]

Montwood next argues that the district court erred in giving certain instructions and in refusing certain of Montwood's requested instructions. Its arguments here are virtually a repetition of its contentions regarding the parol evidence rule and the statute of frauds which we have addressed and found wanting above. Thus, for example, Montwood requested that the jury be instructed that "any evidence tending to show that any oral undertaking or agreement * * * tending in any manner to vary the terms of these two instruments, must be wholly disregarded." It argues now

---

**5.** Ark.Stat.Ann. § 85–1–206(1) (1961) provides:
Except in the cases described in subsection (2) of this section a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars [$5,000] in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent.
If this statute does apply to the sale of the amusement ride, the three conditions—price, identification of subject matter, and signature—were met by the bill of sale. Montwood also cites us to several Arkansas cases involving section 2–201 of the Code, which establishes a statute of frauds for the sale of goods. It is doubtful that the ride fell into the category of "goods," since it was neither "moveable at the time of the identification to the contract for sale," Ark.Stat.Ann. § 85–2–105(1) (1961), nor a structure on realty "to be severed by the seller." *Id.* § 85–2–107(1). If section 2–201 should be applicable, the bill of sale would also have met the requirements of a writing established there. *See id.* § 85–2–201(1) & comment 1.

**6.** In its reply brief, Montwood apparently argues for application of the statute of frauds on evidentiary grounds:

Appellee [Hot Springs] * * * seeks to avoid the application of the statute of frauds by arguing that there was an "oral agreement" to purchase the ride. * * * Appellee bases its argument on the false premise of an "oral agreement." * * * The underlying problem with Appellees [sic] arguments to escape the application of the statute of frauds is the evidentiary weakness of the defense. The fact is that the Appellee's defense is based on the testimony of four individuals, no one of whom has knowledge of the facts of this transaction both preceding it and during its consummation. Each had his own fragmented version based to some extent on hearsay.
The reply does not address the issue. Since payment was undisputed, as a matter of law the contract was out of the statute of frauds. The questions then for the district court were whether the evidence of the contract in its composite written and oral form was first admissible and then sufficient to justify the conclusion the jury came to. We have found that the parol evidence was properly admitted, and the sufficiency of the evidence is not challenged on appeal except in this peripheral fashion. If Montwood *is* raising this issue, we have reviewed the record carefully, and cannot conclude from it that the evidence was so lacking in sufficiency that the judgment must be reversed.

that the district court erred in refusing the instruction because Montwood in proffering the instruction was actually requesting the court to "instruct the jury as to the Parol Evidence Rule which requires a finding that the written documents do not evidence the complete agreement between the parties or are ambiguous as to the terms of the agreement." Montwood thus appears to argue that the jury was improperly instructed as to the *exceptions* to the parol evidence rule. The instruction given, however, clearly treats the exception:

> If you believe from the evidence that the agreement between the parties was not intended to be contained totally in the instruments signed by them, but rather consisted of both written and oral promises, then the oral portions of the agreement may be enforced just as though these portions had appeared in the written contract.

We have reviewed the instructions given, find them in conformity with the law of Arkansas regarding parol evidence and the statute of frauds which we have discussed above, and cannot conclude that the district court erred in so instructing the jury.

█ Montwood finally argues that the district court erred in allowing Hot Springs to argue first (and reply last) in closing arguments to the jury. As the only issue in dispute at this point in the trial was whether the back rents were included in the $500,000 sales price, and as Hot Springs had the burden of proof on this issue, it properly was allowed to open closing arguments. The court's decision lay within its sound discretion, *see Martin v. Chesebrough-Pond's Inc.*, 614 F.2d 498, 501 (5th Cir.1980), and we are certainly not prepared to find it "inconsistent with substantial justice." Fed.R.Civ.P. 61. "The matter of a court's allocation of the right to open and close * * * does not go to the merits of a controversy and has long not been the subject of writ of error." *Moreau v. Oppenheim*, 663 F.2d 1300, 1311 (5th Cir.1981), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982).

We affirm the judgment of the district court.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I would hold as a matter of law that the language contained in the June 10 Mutual Release was clear and unambiguous. For that reason I believe the testimony of the Hot Springs Theme Park witnesses about prior negotiations about the inclusion of the back rents in the sales price should have been excluded by the parol evidence rule. I would reverse the judgment of the district court.