Linda RAINEY v. Retha TRAVIS

92-857                                              850 S.W.2d 839

Supreme Court of Arkansas
Opinion delivered April 5, 1993

*Sanford & Stiritz*, by: *Jon R. Sanford*, for appellant.

*Laws & Murdock, P.A.*, for appellee.

Robert H. Dudley, Justice. Appellant, Linda Rainey, the plaintiff below, is the daughter of Dolan Travis and his first wife, who died in the forty-ninth year of their marriage. In 1986, after his wife's death, Dolan Travis, who was about seventy years old at

the time, and appellee, Retha Travis, who now is seventy years old, decided to get married. The prospective spouses each consulted with their attorneys and entered into an antenuptial agreement that gave appellee the right to live in Dolan Travis's home after his death. The material provision is as follows:

> The following real property, which is the prospective husband's home, shall remain his separate property, except the wife can remain in the home after his death for the rest of her natural life, unless she vacates the property for any reason. Wife specifically waives and relinquishes any dower or homestead rights she may have, now or in the future, in the following real property: [property description].

Dolan Travis and Retha Travis, the appellee, were married on September 6, 1986. He died on September 29, 1987, a little over a year later. After Dolan Travis's death, appellee continued to live in the home. Unfortunately, the home is located within sight of appellant's home, and, over a period of several months, appellant and some other neighbors observed that a truck was parked in front of appellee's home and remained there overnight. Appellant decided that appellee was permitting a man to stay in the home overnight, and, since it had been her parent's home, she thought such action was outrageous. She filed suit alleging that the action was in breach of an oral side-agreement to the prenuptial agreement and that it amounted to intentional infliction of emotional distress. Appellee moved for summary judgment, and the trial court granted the motion. Appellant appeals. The ruling of the trial court was eminently correct.

Appellant alleged that appellee's conduct was in violation of one of four alleged oral side-agreements that were entered into as a part of the antenuptial agreement. She indicated that her father had told her of the existence of these agreements after the antenuptial agreement was written, but before it was executed. One of the alleged oral agreements was that appellee could remain in the home only as long as she lived there alone and only as long as she did not use the home for any immoral purpose. Appellant alleged the breach of this agreement and further alleged that the breach of this agreement constituted the intentional infliction of emotional distress.

Appellant first argues that the prenuptial agreement is ambiguous and that parol evidence is admissible to explain the ambiguity. She makes the argument because it is only when an ambiguity exists in a contract that parol evidence is admissible. *See Isbell* v. *Ed Ball Construction Co.*, 310 Ark. 81, 833 S.W.2d 370 (1992). The prenuptial agreement is clear on the issue of the appellee's right to live in the house. There is no ambiguity, and the trial court correctly ruled that extrinsic evidence was not admissible.

Appellant also argues that parol evidence should be admissible to establish the restrictions on appellee's right to live in the home because the additional agreements are *collateral agreements*, and extrinsic proof of collateral agreements is not excluded by the parol evidence rule. This court discussed the "collateral agreement rule" in *Lane* v. *Pfeifer*, 264 Ark. 162, 568 S.W.2d 212 (1978). There we stated,

> It is well recognized that parol evidence cannot be introduced to change or alter a contract in writing. The test of admissibility is whether the evidence offered tends to alter, vary, or contradict the written contract, or only to prove an independent, collateral fact about which the written contract was silent. In the former instance the testimony is inadmissible; in the latter, it is competent and proper. When testimony is offered to prove an independent, collateral fact about which the written contract is silent, the parol evidence rule is not applicable. . . .

*Id.* at 167, 568 S.W.2d at 215 (citations omitted).

In the present case, the prenuptial agreement provided for appellee's interest in the home. The agreement gave appellee the right to live in the home after the husband's death for the rest of her life unless she vacates the property. The agreement covered the subject. The additional requirement, alleged by appellant to have been breached, requires appellant to live in the home alone and to not use the home for any immoral purpose. This relates directly to the unconditional right to live in the home granted in the agreement. The additional requirement is therefore neither independent nor collateral, as is required under *Lane*. Thus, the trial court correctly ruled that extrinsic evidence was not admissible to establish the existence of additional requirements.

■ Because the extrinsic evidence proposed by appellant does not concern independent, collateral agreements, it must be offered to alter the antenuptial agreement. As such, the evidence is excluded by the parol evidence rule. Under that rule, all prior and contemporaneous proposals and agreements merge into the written agreement, which cannot be added to or varied by parol evidence. *City of Crossett v. Riles,* 261 Ark. 522, 549 S.W.2d 800 (1977). This rule applies only to documents that the parties intended as a final and complete expression of their agreement. *See Farmers Coop. Ass'n, Inc.* v. *Garrison,* 248 Ark. 948, 454 S.W.2d 644 (1970). In the present case, the antenuptial agreement contains what is termed a "merger clause." The clause reads, "The provisions contained in this agreement represent the entire understanding between prospective husband and prospective wife pertaining to their respective property and marital property rights."

■ Finally, the Court of Appeals has held that the parol evidence rule does not apply to bar a stranger from introducing extrinsic evidence concerning a written agreement. *See Silivcraft, Inc.* v. *Southeast Timber Co.,* 34 Ark. App. 17, 805 S.W.2d 84 (1991); *Sterling* v. *Landis,* 9 Ark. App. 290, 658 S.W.2d 429 (1983). The rule cited by the court in those cases was based on holdings of this court. We have held that the parol evidence rule bars only parties and those claiming an interest under the contract from using extrinsic evidence regarding the contract. *See Barfield Mercantile Co.* v. *Connery,* 150 Ark. 428, 234 S.W. 481 (1921); *Talbot* v. *Wilkins,* 31 Ark. 411 (1876).

Here, appellant is not in privity of contract with her father, as she did not succeed to the rights of her father under the contract. However, appellant is not a "stranger" to the contract and has sufficient ties to it to be bound by the rule as would the parties. In *Barfield Mercantile,* we held that the situation of a nonparty to the written instrument fell within the operation of the rule so that the nonparty was entitled to the benefit of the parol evidence rule. In that case the nonparty was a former lessee who had sold his leasehold interest to one who later purchased the fee interest. The trial court had allowed the former owner of the fee estate to testify that there was an oral agreement in the sale of the property that the rents for that year would be reserved to her. On appeal, we held that the trial court erred in allowing the oral

testimony. We held that the nonparty was "directly interested" in the deed because it was in the chain of conveyances that merger of the fee and leasehold estates occurred and thus the extinguishment of his obligation under the lease.

In the present case, appellant is entitled to possession of the real estate when appellee no longer lives in the home. She received that right to the real estate as her father's heir. The agreement giving appellee the right to live in the home substantially and directly affects appellant's rights in the real estate. She cannot sell the home or live in it herself because of the agreement. Under these facts, appellant has sufficient ties to the agreement to cause her to be "directly interested" in it under *Barfield Mercantile*, and she is thus bound by the parol evidence rule just as the parties to the agreement would be.

Appellant argues that the trial judge also erred in granting summary judgment on the second count of her complaint, intentional infliction of emotional distress. This court has recently summarized the law in Arkansas on this tort:

> We first recognized the tort of outrage — the intentional infliction of emotional distress — in *M.B.M. Co.* v. *Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). The conduct complained of must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." While this court has recognized the type of conduct must be decided on a case by case basis, the stringent standard in *Counce* has prevailed.

*Neff* v. *St. Paul Fire & Marine Ins. Co.*, 304 Ark. 18, 20, 799 S.W.2d 795, 796 (1990) (citations omitted).

Appellant's basis for her claim of intentional infliction of emotional distress falls far short of meeting the stringent standard followed by this court. The fact that a seventy-year-old woman is having a man spend the night in the home in which she has a right to live is not conduct so outrageous and extreme as to be utterly intolerable in a civilized society. Even in the context of the present case, that the home was appellant's parent's home, appellee's alleged conduct does not rise to the necessary level of

extremeness and outrageousness to state a claim for intentional infliction of emotional distress.

█ Finally, appellant claims that the trial judge erred in granting summary judgment on this second count because genuine issues of material fact exist concerning whether appellee actually committed the conduct giving rise to the claim. Appellee admits the conduct occurred, while disputing its frequency. Even if there is a dispute over the frequency of the conduct, it is not a *material* dispute. If all of appellant's allegations are taken as true, she does not state a claim for intentional infliction of emotional distress. Any unresolved factual issues are therefore irrelevant, and the trial judge did not err in granting the motion for summary judgment on this count.

Affirmed.