**Lori Byrd MARTIN, Plaintiff,**

v.

**CHESEBROUGH–POND'S, INC., Defendant-Third-Party Plaintiff-Appellant,**

**Foster Forbes Glass Company, Third-Party Defendant-Appellee.**

**No. 79–1585 Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

March 27, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Herbert Boyland, Longview, Tex., for Chesebrough-Pond's, Inc.

Atchley, Russell, Waldrop & Hlavinka, Norman C. Russell, Texarkana, Tex., for Foster Forbes Glass Co.

Before GODBOLD, REAVLEY and AN-DERSON, Circuit Judges.

PER CURIAM:

In this diversity negligence case we are asked to determine whether there was sufficient evidence to sustain the jury verdict, whether the district court erred in its instructions to the jury, and whether it erred in refusing to give rebuttal argument to one of the defendants. We find no error on the part of the district court and we find there is a rational basis in the record for the jury's verdict. Accordingly, we affirm.

Mrs. Lori Byrd Martin was severely injured in her right eye when a bottle of cologne exploded. Mrs. Martin initially sued Chesebrough, the bottler and seller of the spray cologne, alleging the product was defective and unreasonably dangerous. Chesebrough in turn brought a third-party complaint against Foster Forbes, the manufacturer of the bottle, alleging that the bottle, if defective, was defective when it left the manufacturer, and seeking indemnity or, alternatively, contribution. Foster Forbes in turn counterclaimed against Chesebrough seeking indemnity and/or contribution. Mrs. Martin thereafter also sued Foster Forbes.

Answering special interrogatories, the jury found that the bottle was in a defec-

tive condition and unreasonably dangerous to Mrs. Martin when it left the hands of Chesebrough. The jury found that the bottle was neither in a defective condition nor unreasonably dangerous when it left the hands of the manufacturer, Foster Forbes. Based on the jury's verdict, judgment was entered for Mrs. Martin in the amount of approximately $456,000. The judgment denied any right of recovery as against Foster Forbes by either Mrs. Martin or Chesebrough. Chesebrough has since settled with Mrs. Martin, and brings this appeal only with respect to its action for indemnity or contribution against Foster Forbes.

I. Evidence supporting jury's verdict.

Chesebrough claims that the finding of the jury, that the bottle was not in a defective condition when it left the hands of Foster Forbes, is contrary to the clear, great and overwhelming preponderance of the evidence. Chesebrough misstates the test which we must apply in considering whether to reject the verdict of a jury. This Court has said:

> In considering such arguments, an appellate court may not usurp the functions of the jury. It is not for us to weigh conflicting evidence, judge the credibility of witnesses, and evaluate the jury's verdict in that light. *Torrence v. Union Barge Line Corp.*, 5 Cir. 1969, 408 F.2d 873, 875; *United States v. Mills*, 5 Cir. 1968, 399 F.2d 944, 948. Rather, 'our sole function is to ascertain if there is a *rational basis in the record* for the jury's verdict.' *Helene Curtis Industries, Inc. v. Pruitt*, 5 Cir. 1967, 385 F.2d 841, 850, *cert. denied*, 1968, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 [emphasis in original]. And, in the words of the Supreme Court, 'only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear.' *Lavender v. Kurn*, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916, 923.

*Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529 (5th Cir. 1974). See also *McBrayer v. Teckla, Inc.*, 496 F.2d 122 (5th Cir. 1974).

The record in this case reveals a rational basis for the jury's verdict.

█ Mrs. Martin kept the bottle of cologne which exploded on the dashboard of her automobile. The accident happened around noon on an early summer day during which the high temperature reached approximately 79°. Expert testimony established that temperatures in a closed automobile may be as much as 40 or 50° higher then the outside temperature, and that under such conditions on the day of Mrs. Martin's injury, pressure within the bottle would have built up to between 43 and 52 psi. It is undisputed that Foster Forbes tested every bottle it shipped to Chesebrough at 87 psi. It is also undisputed that upon receipt of the bottles and before crimping the cap on the bottle,[1] Chesebrough would test every bottle at 85 psi. It is further undisputed that after the crimping process, Chesebrough would check the bottles at a pressure of only approximately 32 psi. before shipping the cologne for sale. Chesebrough would spot check some bottles at higher pressures, but there was no evidence that the bottle which injured Mrs. Martin had been tested at the higher pressures.

Mrs. Martin's expert testified that he believed the crimping process used by Chesebrough caused stress on the bottle which ultimately resulted in its failure. A Chesebrough witness who was in charge of the manufacturing operation admitted that the crimping process was a critical part of the operation and occasionally resulted in breakage. This witness admitted that if the neck of a bottle were not at the precisely correct angle, the crimping process could break or crack the bottle.

█ In light of the above evidence, we hold that there is a rational basis in the record to support the jury's verdict. The fact that Foster Forbes tested the bottles at 87 psi. while Chesebrough would test them only at 32 psi., after the crimping and before shipment for sale, affords a rational basis to conclude the bottle was in a defec-

---

1. The crimping operation secures the cap on the cologne bottle by bending portions of the metal cap under the lip at the top of the bottle.

tive condition and unreasonably dangerous when it left Chesebrough, but not when it left Foster Forbes. The testimony concerning the crimping process gives a rational basis to support the theory that Chesebrough damaged the bottle in the crimping stage of its operation. Although there was ample conflicting evidence supporting Chesebrough's theory, it is the function of the jury to resolve such conflict in the evidence. Accordingly, we hold that there is sufficient evidence to sustain the jury verdict.

## II. Improper instructions.

▮ Chesebrough argues that Foster Forbes made a representation that the bottle was safe for its intended use, and that the following instruction to the jury precluded its consideration of that representation:

> As to the contentions between Defendant, Chesebrough-Ponds, Inc., and Defendant, Foster Forbes Glass Company, if you find from a preponderance of the evidence that Chesebrough-Ponds assumed the sole responsibility for the entire design of the cologne bottle in question, then you are instructed that Foster Forbes cannot be held responsible for any defect in the bottle's design.

> On the other hand, if you find from a preponderance of the evidence that Defendant, Foster Forbes Glass Company, participated in the bottle's design, then you are instructed that Foster Forbes can be held responsible for the design defect, if any, to which it contributed.

Contrary to Chesebrough's contention, we find that the instruction did permit the jury to consider any representations made by Foster Forbes concerning the safety or design of the bottle; in fact, the jury charge expressly invited such consideration by specifically focusing the attention of the jury on any possible participation by Foster

Forbes in the bottle's design. It was only if the jury found that Chesebrough "assumed the *sole responsibility* for the *entire* design of the cologne bottle" (emphasis added), thus finding no participation by Foster Forbes, by representations or otherwise, that Foster Forbes could not be held responsible for any design defect. We find no merit in Chesebrough's assignment of error.[2]

## III. Order of closing argument.

▮ At trial each party presented its closing argument in the order it had presented evidence, i. e. Mrs. Martin, Chesebrough, Foster Forbes, and then Mrs. Martin in rebuttal. Chesebrough complains that the trial court should have granted its request for rebuttal to Foster Forbes' argument. Normally the party with the burden of proof has the right to open and close the argument to the jury. Where, however, several defendants plead over against each other, the order of their arguments as among themselves, rests within the sound discretion of the court. 88 C.J.S. *Trial* § 166. Where a defendant crossclaimed against a co-defendant for damages and contribution, it was held no abuse of discretion to refuse the first defendant rebuttal against his co-defendant. *Dayoc v. Johnson*, Ky., 427 S.W.2d 569 (1968). Here, where both Chesebrough and Foster Forbes have actions for indemnity or contribution against one another, both parties have a burden in proving claims against the other. Accordingly we find there was no abuse of discretion in refusing Chesebrough rebuttal to Foster Forbes. *Cf. Giffin v. Ensign*, 234 F.2d 307 (3rd Cir. 1956) (no abuse of discretion in trial court refusing rebuttal argument to operator and owner of vehicle against fellow defendants, manufacturer and assembler of automobile, even though plaintiff's case had focused primarily on the operator's and owner's negligence). Nor

---

2. *Borg Warner Corporation v. White Motor Company*, 344 F.2d 412 (5th Cir. 1965) and *Richards Mfg. Co. v. Aspromonte*, 557 S.W.2d 543 (Tex.Civ.App.1977), cited by Chesebrough, are not in point. Neither case involved jury instructions. *Borg Warner* held that where a jury found both a manufacturer and an assembler negligent in the production of a clutch,

both were *pari delicto* and indemnity from one party to the other is not proper. *Aspromonte* awarded indemnity to the seller of a product against its manufacturer on the basis of an indemnification clause in a contract when the special findings of the jury did not preclude utilization of the indemnity clause.

**502**

under Fed.R.Civ.P. 61 was the trial court's action "inconsistent with substantial justice."

AFFIRMED.