USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1288 ALBA FERNANDEZ, ET AL., Plaintiffs, Appellants, v. CORPORACION INSULAR DE SEGUROS, ET AL., Defendants, Appellees.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, Senior U.S. District Judge] __________________________  ____________________ Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________  ____________________ Kevin G. Little, with whom Law Offices of David Efron was on ________________ ____________________________ brief for appellants. Carlos A. Del Valle Cruz for appellees GIC, et al. ________________________ Alfonso Miranda Cardenas, with whom Pedro J. Cordova, Jose A. _________________________ _________________ ________ Miranda Daleccio, Jose E. O'Neil Font, Carmen M. Vivas Pietri and Jose ________________ ___________________ ______________________ ____ M. Torres Morales were on brief for appellee Dr. Ricardo Martinez __________________ Cortinez.  ____________________ March 21, 1996  ____________________ CYR, Circuit Judge. Family members filed this medical CYR, Circuit Judge. _____________ malpractice action in federal district court following the death of Hiram Fernandez, and a jury ultimately found for the health care defendants. On appeal, plaintiffs challenge several trial court rulings, including the denial of their motion for new trial. We affirm the district court judgment. I I BACKGROUND BACKGROUND __________ On November 4, 1991, Hiram Fernandez was taken to the emergency room of Federico Trilla Hospital in Carolina, Puerto Rico, after awakening with chest pains, severe leg cramps, and vomiting. The 64-year-old Fernandez informed Dr. Pedro Rivera Bermudez ("Dr. Rivera") that the chest pain had stopped after he vomited, but the severe leg pain had not abated. Fernandez failed to tell Dr. Rivera that he was taking medication for both asthma and hypertension. Since Fernandez did not complain of recurring chest pain, and his vital statistics were within normal or borderline range, Dr. Rivera tentatively diagnosed a pinched nerve but nonetheless ordered an electrocardiogram (EKG), a urinalysis, and an x-ray of the lumbosacral region and the left leg. All tests were negative. A few hours later, Dr. Rivera was relieved in the emergency room by Dr. Ricardo Martinez Cortinez ("Dr. Martinez") whose examination confirmed that Fernandez was in stable condi- tion, with no complaints of chest pain. As a blood test showed a slightly elevated white blood count, Dr. Martinez ordered a 2 second urinalysis, as well as a chest x-ray, to rule out any urinary or pulmonary infection which might have been caused by the vomiting. The chest x-ray coincidently revealed that Fernan- dez had a dilated aorta, which Dr. Martinez attributed to normal borderline hypertension in a patient of Fernandez' age, rather than an emergent symptom of aortal dissection, a condition usually accompanied by excruciating and unrelenting chest pain, fainting spells, profuse sweating, and tachycardia. Like Dr. Rivera, Dr. Martinez diagnosed a pinched nerve. Shortly thereaf- ter Dr. Martinez referred Fernandez to a neuropathic specialist, and discharged him.  The next day, when Fernandez was unable to recognize family members, he was taken to his personal physician, Dr. Abelardo Vargas, who performed a physical examination and another EKG (also negative), and ordered an upper gastrointestinal series to determine whether there was a hiatal hernia. The next day, on his way to undergo these tests, Fernandez collapsed and died. An autopsy revealed the cause of death as a dissected aorta, a condition treatable with surgery in more than 90% of cases. The decedent's spouse, children, and grandchildren filed a medical malpractice suit in federal district court pursuant to 28 U.S.C. 1332 (diversity jurisdiction) against Drs. Rivera, Martinez, and Vargas, and against various insurers of the Federico Trilla Hospital, including Global Insurance Company. Subsequently, Dr. Vargas was dismissed as a party defendant.  3 At trial, Dr. William T. Brown, a Miami-based cardiac specialist, provided expert testimony in behalf of plaintiffs on the applicable duty of care. Drs. Rivera and Martinez testified in their own defense, but presented no independent medical testimony. After the jury returned a verdict for all defendants, plaintiffs unsuccessfully filed a motion for new trial pursuant to Federal Rule of Civil Procedure 59, then brought this appeal. II II DISCUSSION DISCUSSION __________ Appellants challenge four trial court rulings. First, they focus on the denial of their request for rebuttal to the closing argument made by the defense. Although trial court rulings on the conduct, timing, and ordering of closing arguments are reviewed only for abuse of discretion, see Bonilla v. Yamaha ___ _______ ______ Motors Corp., 955 F.2d 150, 155 (1st Cir. 1992); see also United ____________ ___ ____ ______ States v. Wood, 982 F.2d 1, 4 (1st Cir. 1992), appellants insist ______ ____ that civil-action plaintiffs have an absolute right to rebut the ________ closing argument of the defense. See Martin v. Chesebrough- ___ ______ ____________ Pond's, Inc., 614 F.2d 498 (5th Cir. 1980) (noting that "[n]or- ____________ mally the party with the burden of proof has the right to open and close," but holding that a particular codefendant had no ___________ right to rebuttal as against another codefendant where the two had asserted mutual cross-claims).  ______ Appellants are mistaken. The Martin court did not ______ describe a civil-action plaintiff's "right" to rebuttal as absolute, but merely reconfirmed that the decision to permit 4 rebuttal is a procedural matter which rests within the sound discretion of the trial judge, id. at 501, and rarely (if ever) ___ provides fertile ground for appeal. See Lancaster v. Collins, ___ _________ _______ 115 U.S. 222, 225 (1885); Montwood Corp. v. Hot Springs Theme ______________ __________________ Park, 766 F.2d 359, 364 (8th Cir. 1985); Moreau v. Oppenheim, 663 ____ ______ _________ F.2d 1300, 1311 (5th Cir. 1981), cert. denied, 458 U.S. 1107 _____ ______ (1982); Commercial Iron & Metal Co. v. Bache Halsey Stuart, Inc., ___________________________ _________________________ 581 F.2d 246, 249 (10th Cir. 1978), cert. denied, 440 U.S. 914 _____ ______ (1979).  Appellants further argue that rebuttal was vital to counteract the "inflammatory" statements made in argument by defense counsel, who portrayed, as inexplicable, plaintiffs' voluntary dismissal of their claims against Dr. Vargas. Defense counsel argued to the jury that Dr. Vargas, the decedent's long- time personal physician, was the one most likely to have been negligent since he was the last to treat Fernandez, and more familiar with his medical history. Defense counsel further argued that Dr. Vargas, like the defendant-physicians, had not suspected that the Fernandez symptoms indicated an incipient aortal dissection but rather a hiatal hernia. Appellants there- fore contend that they were entitled to remind the jury in rebuttal that: (1) the defendants had the right to implead Dr. Vargas if they believed he was the only negligent party and the sole proximate cause of Fernandez' death, and (2) Dr. Vargas had not treated Fernandez in a hospital; thus, unlike defendants, could not as readily have obtained a chest x-ray.  5 As plaintiffs failed to challenge the statements made by defense counsel in closing argument, we review only for plain error. See Johnson v. National Sea Prods., Ltd., 35 F.3d 626, ___ _______ __________________________ 631 (1st Cir. 1994). The statements made by the defense in closing were in no sense inflammatory, but rather a measured response to earlier observations by plaintiffs' counsel that "Dr. Vargas [is not] responsible for anything here simply because he did not have the x-rays that these defendants had the benefit of having because he was not in a position of having a full clinical picture." Indeed, plaintiffs not only invited the defense response they now claim gave rise to a vital need for rebuttal,1 but their invitation was itself a sufficient "reminder" to the jury that plaintiffs had adduced evidence that Dr. Vargas did not treat Fernandez in a hospital setting where x-rays were readily obtainable. Thus, the district court ruling was well within its sound discretion.  In addition, though Fed. R. Civ. P. 14(a) permits _______ defendants to implead a joint tortfeasor, see also Reyes-Lopez v. ___ ____ ___________ Misener Marine Constr. Co., 854 F.2d 529, 535 n. 23 (1st Cir. ___________________________ 1988) (citing to Puerto Rico case law allowing joint-tortfeasor contribution), Rule 14 is not mandatory. Appellants do not cite, nor have we found, any authority for the proposition that a jury must be permitted to draw an adverse inference from a defendant's decision to forego a Rule 14 impleader. We therefore conclude  ____________________ 1In fact, defense counsel expressly noted in closing argu- ment: "This is the same Dr. Abelardo Vargas and I refer to this because brother counsel did refer to it [in his closing]." 6 that there was no plain error. Second, appellants claim that it was an abuse of discretion to refuse their timely request to instruct the jury that defendants could have impleaded Dr. Vargas. For the reasons discussed above, we find no abuse of discretion. See Makuc v. ___ _____ American Honda Motor Co., 835 F.2d 389, 393 n.1 (1st Cir. 1987) _________________________ (noting that proponent must cite to some legal authority which would support its proposed jury instruction). Third, appellants contend that over-repetition of the district court's unexceptionable jury instruction that plain- tiffs must establish all elements of their negligence claims  constituted reversible error because it exaggerated the burden of proof in the minds of the jury. See United States v. Assi, 748 ___ ______________ ____ F.2d 62, 66 (2d Cir. 1984). Similar reversible error arose, plaintiffs say, from the district court's over-repetition of its "error in judgment" instruction, viz., that a physician is not ____ liable under Puerto Rico law for a faulty diagnosis or failure to treat if there existed "a reasonable or educated doubt as to the [appropriate] medical course to [have] follow[ed]."2 Once again, we must disagree. As appellants failed to object to the burden-of-proof instructions before the jury retired to deliberate, see Fed. R. ___ Civ. P. 51, we review for plain error. See Kerr-Selgas v. ___ ___________  ____________________ 2Appellants also argue that no "error-in-judgment" instruc- tion was appropriate because defendants failed to adduce expert medical testimony to support a jury finding that "a reasonable or educated doubt" existed. But see infra pp. 8-10.  ___ ___ _____ 7 American Airlines, Inc., 69 F.3d 1205, 1213 (1st Cir. 1995). ________________________ Even though there may be a threshold beyond which further repeti- tion of an otherwise proper jury instruction creates an unaccept- able risk that the jury will be misled, see Davet v. Maccarone, ___ _____ _________ 973 F.2d 22, 26 (1st Cir. 1992), appellants do not approach such a showing by citing three brief references to the burden of proof in the eleven-page jury charge.  Similarly, though plaintiffs asserted a contemporaneous objection to the "multiple" error-in-judgment instructions, there was no error. A correct understanding of the error-in-judgment principle, the seminal legal concept defining the duty of care incumbent upon physicians under Puerto Rico medical malpractice law, was vital to a proper jury verdict. Moreover, the trial court's error-in-judgment instructions, individually and in combination, were neither suggestive nor prejudicial. Finally, appellants claim that the district court erred in denying their motion for new trial. See Fed. R. Civ. P. 59. ___ Plaintiffs' independent expert, Dr. Brown, testified that Drs. Rivera and Martinez were negligent in failing to record Fernan- dez' past medical history on the hospital charts; and in failing to diagnose the aortal dissection on November 4, based on the complaints of earlier chest pain, and the chest x-ray disclosing aortal dilation. Appellants argue that the jury verdict was against the weight of the evidence because the duty of care in a malpractice action can only be proven through expert medical testimony; their expert, Dr. Brown, was the only independent ____ 8 medical expert to testify at trial; and the self-serving, biased testimony by the defendant-physicians themselves concerning their own duties of care was inherently untrustworthy.  9 A Rule 59 ruling, denying a motion for new trial based on an alleged insufficiency of evidence, is reviewed for abuse of discretion. See Lama v. Borras, 16 F.3d 473, 477 (1st ___ ____ ______ Cir. 1994). A new trial should be granted only if the verdict, though rationally based on the evidence, "was so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice." Id. But where there is substantial evidence to ___ support the verdict, it is "'only in a very unusual case'" that denial of a Rule 59 motion will be ruled an abuse of discretion. Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. 1987) (citation _________ _____ omitted). This is not such a case.  At trial, plaintiffs had to establish: (1) the basic norms of knowledge and medical care applicable to general practi- tioners or specialists; (2) that the defendant-physicians did not meet these basic norms in their treatment of Fernandez; and (3) a causal relation between the defendants' acts or omissions, and Fernandez' death. See Rolon-Alvarado v. Municipality of San ___ ______________ ___________________ Juan, 1 F.3d 74, 77 n.2 (1st Cir. 1993). Although jurors rarely ____ are able to determine the applicable standard of medical care without the benefit of expert testimony, under Puerto Rico law "there exists always a presumption that the treating physicians ___________ have observed a reasonable degree of care . . . in the process of giving medical attention and treatment. [And] [p]laintiff bears the burden of refuting this presumption." Id. at 78 (emphasis __ added). Thus, appellants' premise that malpractice defendants must invariably introduce independent expert testimony on the 10 applicable duty of care is flawed. Although defendant-physi- cians often do adduce independent expert testimony on the appli- cable standard of medical care, the jury's implicit rejection of Dr. Brown's testimony in this case was itself sufficient to support a verdict for defendants because of the rebuttable presumption of due care indulged under Puerto Rico law, see id.  ___ ___ The jury was not compelled to credit Dr. Brown's testimony. "While not allowed to speculate, the factfinder is of course free to find some experts more credible than others." Lama, 16 F.3d at 478. On cross-examination, Dr. Brown admitted ____ that he was not able to read or speak Spanish fluently, that he had not been provided initially with certified English transla- tions of the hospital and medical records relating to Fernandez, and that until shortly before trial he had relied on informal translations whose accuracy was seriously disputed at trial  prepared by his secretary and plaintiffs' counsel.3 Given the infirmities in the only expert testimony presented by plaintiffs, there was no abuse of discretion in denying a new trial.4   ____________________ 3For example, the hospital records stated that Fernandez had vomited before arriving at the hospital, and that this "ended" his chest pain, while the informal translations relied on by Dr. Brown merely indicated that the chest pain had "improved." In addition, presented with a medical treatise describing typical symptoms of an impending aortal dissection, Dr. Brown's only response was the unexplicated assertion that he simply did not care what the medical treatise provided.  4As concerns the contention by Dr. Brown that the defendant- physicians were negligent in failing to record Fernandez' medical history on the medical charts, the jury was entitled to credit the defendant-physicians' testimony that they left the "medical history" section of the hospital record blank because Fernandez informed them (inaccurately) that he had no significant medical 11 The district court judgment is affirmed. Costs are The district court judgment is affirmed. Costs are __________________________________________ _________ awarded to appellees. awarded to appellees. ____________________  ____________________ history. See supra p. 2. ___ _____ 12