**Andres Maeso SCHROEDER,
et al., Plaintiffs,**

v.

**María Teresa de BERTOLO,
et al., Defendants.**

**Civil No. 93–1797(JP).**

United States District Court,
D. Puerto Rico.

Aug. 21, 1996.

investigation had there been proceedings pursuant to the "subchapter."

José F. Quetglas Alvarez, San Juan, PR, for Plaintiffs.

Rosa M. Nogueras de González, San Juan, PR, Juan B. Soto Balbas, San Juan, PR, Jaime E. Morales Morales, San Juan, PR, Ramonita Dieppa González, Servicios Legales de Puerto Rico, San Juan, PR, for Defendants.

### OPINION AND ORDER ON MOTION FOR NEW TRIAL

PIERAS, District Judge.

The Court has before it plaintiffs' motion for a new trial and its supplement, and oppositions of codefendants American International Insurance Co. of Puerto Rico, María Teresa de Bertolo, Lucy Díaz, and Olga Torres, in their capacity as members of the Board of Directors of Concordia Gardens II Condominium (hereinafter "AIICO codefend-

ants"), AAA Property Management Company and El Fénix de Puerto Rico (hereinafter "AAA codefendants"), María Teresa de Bertolo, in her personal capacity, her husband and their conjugal partnership; and Julio Ramírez, the handyman at Concordia Gardens II Condominium (hereinafter "Condominium") (docket Nos. 244, 245, 246, 259, 263, 264, and 273). For the following reasons, plaintiffs' motion is hereby **DENIED.**

### I. INTRODUCTION

This is a cause of action for the alleged violations of the Fair Housing Act Amendments ("FHAA"), 42 U.S.C. § 3601, *et seq.* Plaintiffs, Rosita Maeso Schroeder's ("Rosita") brothers and sister, brought this cause of action in their capacity as legal representatives of the estate of their deceased sister, as well as in their personal capacity for damages suffered due to their sister's suicide. Defendants are members of the Board of Directors of Concordia Gardens II Condominium Association, the handyman who worked at the Condominium, the Condominium's management company, and the insurance companies insuring the various parties.

In the Complaint, plaintiffs contended that defendants initiated groundless claims against decedent for breach of the peace and misappropriation of common property, threatened to file groundless criminal charges against decedent, and entered decedent's dwelling without her consent to search for common property that decedent had allegedly taken from the common areas. Through these actions, plaintiffs alleged that defendants intimidated Rosita and intentionally prohibited her from using the common areas at the Condominium because of her mental illness, and caused her to commit suicide, in violation of 42 U.S.C. § 3604(f) and § 3617. In addition, plaintiffs asserted a second claim under this Court's supplemental jurisdiction for the wrongful death of Rosita, in violation of Puerto Rico Civil Code, § 1802, 31 L.P.R.A. § 5141.

After a three week trial, on April 6, 1996, the jury found that Rosita did have a mental handicap, as defined by the federal statute. The jury also found, however, that codefendants' actions did not constitute intentional discrimination against Rosita because of her handicap, in violation of her housing rights. In their post-verdict motion, plaintiffs contend that the Court committed prejudicial error by precluding some statements made by Rosita to her brother, by admitting other statements of Rosita, by admitting evidence of defendant Bertolo's good character, and that the jury verdict is contrary to the weight of the evidence. Defendants' oppose plaintiffs' motion.

### II. STANDARD FOR A MOTION FOR A NEW TRIAL—RULE 59

Rule 59 of the Federal Rules of Civil Procedure broadly permits a trial court to order a new trial, based upon the motion of a party or upon the Court's own initiative, "for any of the reasons for which new trials have heretofore been granted". Fed.R.Civ.P. 59(a). The decision whether to grant a motion for a new trial lies within the discretion of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190–91, 66 L.Ed.2d 193 (1980). However, trial courts shall exercise their discretion in favor of granting a new trial sparingly since "a jury's verdict on the facts should only be overturned in the most compelling circumstances." *Wells Real Estate, Inc. v. Greater Lowell Board of Realtors,* 850 F.2d 803, 811 (1st Cir.) *cert. denied,* 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). *Keeler v. Hewitt,* 697 F.2d 8, 11 (1st Cir.1982). The court shall exercise appropriate caution when deciding whether it is necessary to set aside a jury verdict. *Kearns v. Keystone Shipping Co.,* 863 F.2d 177, 181 (1st Cir.1988).

Since the jurors are the ultimate triers of fact, the trial court shall be especially reluctant to order a new trial when the verdict rested upon the jury's determination of the credibility of witnesses. *Rios v. Empresas Lineas Maritimas Argentinas,* 575 F.2d 986, 990 (1st Cir.1988). Even if the trial court could have reached a verdict opposite from the jury, the court shall not upset a jury verdict which is based on the evidence presented at trial. *Velazquez v. Figueroa–Gomez,* 996 F.2d 425, 428 (1st Cir.), *cert. denied,* 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993). A trial court shall order

a new trial "only if the verdict, though rationally based on the evidence, 'was so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice,'" *Fernandez v. Corporacion Insular De Seguros,* 79 F.3d 207, 211 (1st Cir.1996) (citing *Lama v. Borras,* 16 F.3d 473, 477 (1st Cir.1994)); *Federico v. Order of Saint Benedict in Rhode Island,* 64 F.3d 1, 5 (1st Cir. 1995).

## III. DISCUSSION

### A. *WEIGHT OF EVIDENCE*

■ The jury's verdict finding that defendants did not intentionally discriminate against Rosita because of her handicap in violation of her housing rights, is not contrary to the substantial weight of the evidence. Nor does this verdict result in the miscarriage of justice.

■ Under the FHAA, a plaintiff has the burden of proving first that the plaintiff suffered from a mental impairment, as defined by the statute, and second, that defendants intentionally discriminated against plaintiff because of her mental impairment, in violation of plaintiff's housing rights. If plaintiff proves those two elements, defendants may nevertheless demonstrate that plaintiff caused a direct threat to the health and safety of the other residents of the communal living area, and that defendants took reasonable measures to accommodate plaintiff's threat.

The jury verdict, finding that plaintiffs had prevailed on the first element, but failed to prevail on the second essential element of their prima facie case is well supported by the evidence. A core issue of this case involved the exact nature of Rosita's mental condition. At trial, plaintiffs presented evidence that Rosita suffered from meningitis when she was a young child, and as a result she suffered from a mental condition. Her educational experience terminated at the seventh grade; she never worked on a daily basis for monetary compensation; and she lived at home with her parents and her nanny during the duration of their respective lives.

Prior to trial, the parties stipulated that Rosita attempted to commit suicide in 1986, six years prior to her actual suicide. Nonetheless, during their case in chief, plaintiffs failed to present any evidence to explain the circumstances surrounding this incident. After plaintiffs had presented their case in chief, the jurors sent the Court a note which reads as follows:

> "To my understanding, Rosita's first suicide attempt in 1986 was not fully developed. I would like to know, if possible, the circumstances under which she tried to commit suicide at that time, or better of [sic], the reasons why she latter [sic] said if she said so, of why she wanted to commit suicide." (Docket No. 233).

After consulting with the attorneys for all parties, the Court responded to the note by reading to the jury the medical record of the hospital on 1986 and Dr. Maeso's statement regarding Rosita's first suicide attempt.

The jury's confusion was caused or at least enhanced by the following incident. During his direct testimony, Dr. Andrés Maeso Schroeder, Rosita's eldest brother and mentor, testified that following her 1986 suicide attempt, Rosita had visited two psychiatrists, Dr. Freyre and Dr. Rafael Cordero. Docket No. 267, Transcript, Third Day, at 59–60. During his deposition, however, Dr. Maeso Schroeder had stated that Rosita was not taken for any psychiatric help after she was released from the hospital, following the 1986 suicide attempt. Nevertheless, during cross-examination, Dr. Maeso Schroeder changed his story once again, and stated that he did not in fact take Rosita to any psychiatrist, following her first suicide attempt. Docket No. 268, Transcript, Fourth Day, at 85.

First, these contradictions were detrimental to a reasonable juror's assessment of Dr. Maeso Schroeder's overall credibility as a witness. Second, Dr. Maeso Schroeder's testimony during trial came as a complete surprise to both defendants and this Court. At no time during discovery had any deponent or plaintiff mentioned anything concerning any medical and psychiatric treatment Rosita may have received following her first suicide attempt.

Compounding the jury's confusion was the testimony of Aiesa Maeso, Rosita's older sister. On the witness stand, she testified that she remembered certain facts regarding Rosita's first suicide attempt. Upon cross-examination, however, she testified that at the time of her deposition, she did not recall that Rosita had ever tried to commit suicide previously. Consequently, the jury was left with a confusing picture of what actually occurred following Rosita's first suicide attempt in 1986.

The defense experts in psychiatry testified that individuals with a history of suicidal attempts had a greater tendency to try to commit suicide again. And that the cause of Rosita's suicide was her mental condition as demonstrated by her prior suicide attempt, and not the alleged discriminatory actions of the members of the Board of Directors of the Condominium. Thus, although plaintiffs did present evidence about Rosita's mental condition they did not fully explain all relevant circumstances.

More importantly, plaintiffs failed to prove that codefendants engaged in discriminatory conduct at all. In order to prove that codefendants violated Rosita's housing rights, plaintiffs relied upon three specific incidents during Rosita's residency at the Condominium. On the first occasion, the Board filed a complaint against Rosita and her siblings in the Investigations Court of the Commonwealth of Puerto Rico, citing several problems that the Board had experienced with Rosita. Following a hearing concerning the Board's complaint, Rosita's siblings made some repairs to Rosita's apartment, and the prosecution of the investigation complaint ceased.

On the second occasion, an elderly resident of the Condominium, Mr. Peña, filed a breach of peace complaint against Rosita concerning an incident where Rosita allegedly threatened him with foul language. Julio Ramírez, the handyman of the Condominium also filed a criminal complaint against Rosita based upon the same incident. The criminal complaints were dismissed after Rosita's death, and there was no final decision based upon the merits of the complaints.

On the third occasion, members of the Board entered Rosita's apartment searching for some property of the Condominium which had apparently been stolen. The individuals who entered Rosita's apartment testified that Rosita gave them permission and an invitation to enter her apartment. On June 5, 1992, Rosita committed suicide following an altercation with Julio Ramírez, the handyman.

There was no evidence presented that any of defendants prevented Rosita from using the common areas of the Condominium. To the contrary, several witnesses who were residents of the Condominium testified that they saw Rosita sitting on the benches near the entrance to the Condominium almost daily.

Plaintiffs attempted to portray the actions of the Board as intentional discrimination against Rosita because she suffered from a mental impairment. Defendants on the other hand, portrayed the events as the actions of the governing body of a community organization attempting to resolve problems posed by one of its members. Several witnesses testified as to each party's version of the facts.

In portraying their version, plaintiffs rely heavily upon the testimony of plaintiff Dr. Andrés Maeso Schroeder, Rosita's eldest brother. He testified that he had received the complaints from the members of the Board of Directors concerning Rosita's conduct in the Condominium. Moreover, he testified that he was unable to verify any of the Board's complaints against Rosita, therefore he considered the complaints discriminatory. He also testified that following the three incidents already mentioned, that Rosita telephoned him, complaining of the discriminatory and harassing conduct of the Board.

As already discussed, the jury could have questioned Dr. Schroeder's credibility concerning the way in which he testified, or failed to testify about Rosita's 1986 suicide attempt. These contradictions were detrimental to a reasonable juror's assessment of Dr. Maeso Schroeder's overall credibility as a witness.

■ Another one of plaintiffs' main witnesses was Dr. Madrid, an expert witness and Rosita's treating psychiatrist. Dr. Madrid testified that, in his opinion, the cause of Rosita's suicide had been defendants' allegedly discriminatory conduct. On the other hand, defendants' expert witnesses testified that Rosita had committed suicide due to a number of factors, including her mental condition, her prior suicide attempt, her age, her history of alcoholism, and her relationship with her family members. The jury chose to discredit plaintiffs' expert's finding that defendants had discriminated against Rosita. "While not allowed to speculate, the factfinder is of course free to find some experts more credible than others." *Fernandez*, 79 F.3d at 211 (quoting *Lama*, 16 F.3d at 478). Since the verdict depended upon the jury's decisions regarding the credibility of various witnesses, and the weight to attribute to each of the witnesses' testimony, this Court shall not overturn the jury's verdict. *See Rios*, 575 F.2d at 990. The jury's verdict is clearly based upon the weight of the evidence and does not result in the miscarriage of justice.

### B. EXCLUSION OF ALLEGED EXCITED UTTERANCES

■ It is well settled that the admission and exclusion of evidence is primarily within the discretion of the trial judge. *Blinzler v. Marriott Intern., Inc.*, 81 F.3d 1148, 1158 (1st Cir.1996).

■ Plaintiffs argue that this Court's preclusion of Dr. Maeso Schroeder's proffered testimony as to the content of telephone conversations he had with Rosita during the two-year period prior to her death constituted prejudicial error. Plaintiffs assert that Rosita's statements fell within the excited utterance exception to the hearsay rule, under Rule 803(2) of the Federal Rules of Evidence. Plaintiffs contend first that each of Rosita's telephone conversations to her brother was prompted by a startling event, that soon after the startling event, Rosita would telephone her brother, and that during these telephone conversations, Rosita would make the statements related to the startling event. Thus, they argue that the statements

should have been admitted, and that it was prejudicial error to exclude those statements.

■ Rule 803(2) which provides an explicit exception to the hearsay rule, reads as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

In order to qualify as an "excited utterance", a statement must meet the following criteria: 1) it must have been caused by a startling event; 2) it must occur when the declarant is under the stress or excitement of the event; and, 3) it must relate to that startling event. *Martinez v. McCaughtry*, 951 F.2d 130, 134–35 (7th Cir.1991).

Given the untrustworthy nature of the statements which Rosita allegedly made to her brother, Dr. Andrés Maeso Schroeder, the Court held that it would not follow the prevailing practice of allowing the statement itself to prove that a startling event had occurred. Docket No. 267, Transcript, Third Day of Trial, at 82. This Court ruled that plaintiffs must present extrinsic evidence first that a startling event had actually occurred, before the statements of Rosita could be admissible pursuant to Fed.R.Evid. 803(2).

Therefore, plaintiffs were permitted to introduce into evidence three separate conversations Rosita had with Dr. Maeso Schroeder which followed three specific events about which there existed corroborating evidence. The three events were: the day when members of the Board of Directors entered into Rosita's apartment allegedly without permission looking for missing property of the Condominium which Rosita had allegedly stolen, the day of the breach of peace complaint, and the day when she committed suicide. Docket No. 267, Transcript, Third Day of Trial, at 82–92.

As to the other proffered statements, plaintiffs were unable to present any extrinsic, corroborating evidence that a startling

event had occurred. While testifying on direct, Dr. Maeso Schroeder could not recall the specific dates on which the other calls had been placed. Nor have plaintiffs presented any evidence in the current motion for a new trial, specifying what statement should have been admitted, the date it occurred, and the startling event which preceded its utterance.

Such unspecific allegations are insufficient to support an exception to the hearsay rule. There are no other indicia of the reliability of Rosita's alleged statements to Dr. Maeso Schroeder. Given the self-interestedness of the witness proffering to testify as to Rosita's statements, additional, extrinsic evidence is essential to support the trustworthiness of those out-of-court statements. Failure to produce such extrinsic evidence precludes the admission of the hearsay statements.

## C. ADMISSION OF STATEMENTS OF ROSITA

Plaintiffs next assert that it was prejudicial error for this Court to have admitted into evidence certain statements of Rosita made to non-parties, as admissions by a party opponent pursuant to Rule 801(d)(2) of the Federal Rules of Evidence. Furthermore, plaintiffs argue that one of Rosita's statements was more prejudicial than probative, and should have been excluded under Rule 403.

Rule 801(d)(2) provides as follows:

Statements which are not hearsay. A statement is not hearsay if—

.    .    .    .    .

(2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement in either an "individual or representative capacity ..."

The rule itself does not specifically address the admissibility of the statements of a decedent against decedent's estate. Nevertheless, commentators and courts have held that these statements are properly considered party admissions. "No modern court doubts that a *decedent*, whose rights are transmitted intact to his successor, is a person whose admissions are receivable against a party claiming the decedent's rights as *heir, executor, or administrator*," *Estate of Shafer v. C.I.R.*, 749 F.2d 1216, 1219 (6th Cir.1984) (citing IV J. Wigmore, Evidence in Trials at Common Law § 1081 (1972) (emphasis in original)). In *Estate of Shafer*, the Sixth Circuit held that the Tax Court properly admitted the statements of decedent made to his sons as admissions of decedent's estate. In addition, the Third Circuit has affirmed a district court's rulings that the statements of a deceased defendant were properly admitted as admissions by a party opponent. *Savarese v. Agriss*, 883 F.2d 1194, 1201 (3d Cir.1989). In so holding, the Third Circuit stated "we have, on a prior occasion, suggested that an admission by a party-opponent may be admissible when the party is deceased at the time of the trial," *Id.*

■■■ In the case at bar, Rosita was deceased at the time of the trial. Nevertheless, she was a party to this action through her estate. If plaintiffs had succeeded in obtaining a verdict against defendants, Rosita's estate would have received a monetary award. Therefore, the fact that Rosita was dead does not diminish the interpretation that her estate, in representation of Rosita, was a party to the present cause of action. Therefore, Rosita's statements were admissible against Rosita's estate as a party admission pursuant to Fed.R.Evid. 801(d)(2)(A).

■■■ Next, plaintiffs contend that the Court erroneously admitted a statement of Rosita to the effect that she was in need of money while her siblings and relatives were driving BMWs. Plaintiffs argue that this statement tended to portray Rosita's siblings as rich, where defendants were portrayed as individuals of medium and scarce economic means. They contend that the jury would be more likely to associate themselves with individuals of more moderate means, and therefore were prejudiced against plaintiffs. Consequently, plaintiffs argue that this statement should not have been admitted pursuant to Fed.R.Evid. 403.

The probative value of Rosita's statement outweighed any possible prejudice. This statement was relevant to two distinct issues. First, plaintiffs themselves asserted that defendants' allegedly discriminatory conduct

had caused Rosita to commit suicide. Defendants countered that one of the causes of Rosita's suicide had been the neglect and inattention of Rosita's siblings to her condition. Rosita's statement tended to show that Rosita's state of mind, and that she felt economically neglected by her siblings who were economically stable. Next, the statement was relevant to defendants' affirmative defense that plaintiffs violated their obligations as stated by the Puerto Rico Civil Code dealing with a sibling's duty to economically support another sibling with a mental defect, and that the amount of support required is proportional to the economic means of the siblings. Therefore, the probative value of the statement outweighed any possible prejudicial impact.

### D. ADMISSION OF CHARACTER EVIDENCE

██ In general, plaintiffs argue that defense witnesses should not have been allowed to testify that defendant Bertolo had been an excellent president of the Board of Directors of Concordia Gardens II Condominium Association, nor that she had performed many good actions that benefitted the Condominium. Plaintiffs argue that evidence concerning the good character of defendant Bertolo was irrelevant, and moreover that it was more prejudicial than probative, and therefore it was prejudicial error to allow these statements into evidence.

Rule 402 defines relevant evidence broadly as that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than not. Rule 404(a) in general prohibits admission of evidence of a person's character or trait of character for the purpose of proving action in conformity therewith on a particular occasion, except for limited circumstances. However, Rule 405 permits evidence of a person's character through evidence of reputation or opinion when it is admissible, Fed.R.Evid. 405(a), and through specific instances of conduct where character is an essential element of the charge. Fed. R.Evid. 405(b).

In the case at bar, plaintiffs alleged that defendant Bertolo, as the President of the Board of Directors of the Association, engaged in intentionally discriminatory campaign against Rosita. Therefore, an essential element of plaintiffs' claim depended upon their proof that the Board, headed by defendant Bertolo, intentionally discriminated against Rosita. Consequently, intent is an essential element of plaintiffs' Complaint.

Plaintiffs alleged that the intentional discrimination occurred throughout the two-year period preceding Rosita's suicide, however, plaintiffs only presented evidence that the alleged discrimination occurred on three specific occasions. Evidence that defendant Bertolo's intentions during that two-year period were to solve the problems which arose in the Condominium, and not to discriminate against any of the residents, and moreover, to offer help to the residents, including Rosita, is relevant as to the issue of defendant's intent and therefore, admissible as to the issue of defendant Bertolo's intent.

Plaintiffs only obliquely refer to a contention that this character evidence was prejudicial to plaintiffs and should have been excluded. They argue that the jury could have rewarded Bertolo for her good reputation, and disregarded all other evidence that Bertolo had discriminated against Rosita. This contention is unpersuasive. Consequently, the probative value of the evidence concerning defendant Bertolo's character as the president of the Board of Directors and a neighbor at the Condominium outweighs any minimal claim of prejudice towards plaintiffs.

## IV. CONCLUSION

Based upon all the evidence presented at trial and the parties arguments, the Court does not find that allowing the jury verdict to stand would constitute a miscarriage of justice. Therefore, plaintiffs' motion for a new trial is hereby **DENIED.**

IT IS SO ORDERED.