[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10219

_____

D.C. Docket No. 4:11-cv-00062-CDL


EASTERN PROPERTY DEVELOPMENT
LLC, a Utah limited liability company,
SOUTH EAST ENTERPRISE GROUP
LLC, a Georgia limited liability company,

Plaintiffs-Appellees,

versus

LOREN C. GILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(March 6, 2014)

Before TJOFLAT and WILSON, Circuit Judges, and BUCKLEW,* District Judge.

_____

*Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida,
sitting by designation.

BUCKLEW, District Judge:

Following a jury trial, the jury returned a verdict in favor of Appellees-Plaintiffs Eastern Property Development, LLC ("Eastern Property") and South East Enterprise Group, LLC ("SEE") against Appellant-Defendant Loren Gill ("Gill"), and awarded the plaintiffs $35,335.98 in compensatory damages and $250,000.00 in punitive damages. Gill appeals the punitive damages award, arguing that punitive damages are not warranted under Georgia law and the amount of the award is unconstitutionally excessive under the federal Constitution. Gill also appeals the district court's denial of his right to open and conclude the closing argument under Georgia's plea of justification statute, O.C.G.A. § 51-11-1. After review, and with the benefit of oral argument, we affirm.

## I.    JURISDICTION

We first address whether the district court had subject matter jurisdiction in this case. We find that it did. Although we *sua sponte* questioned whether the pleadings sufficiently alleged diversity of the parties, we need not reach that issue to find that the district court had subject matter jurisdiction. This is because the plaintiffs' amended complaint alleged federal question jurisdiction due to their federal claim for infringement under section 43 of the Lanham Act, 15 U.S.C. § 1125, which was litigated through trial and arose out of the same nucleus of operative facts as the plaintiffs' state law claims. The district court therefore had

2

federal question jurisdiction over the federal law claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C § 1367.

## II.    BACKGROUND

Gill's brother purchased residential and commercial rental properties, and in 1999, created numerous real estate holding trusts that owned each of the properties. For each real estate holding trust, the executive trustee was Dan Van Gasken[1] and the beneficiary was Gill Family Cornerstone Trust ("GFCT"), a trust created by Gill's brother.  GFCT's trustee was Kevin Hartshorn.

Gill Companies, LLC, a property management company owned by Gill's brother, initially handled the rental management of the trust properties.  However, Gill's brother fled the country in 2009 after being convicted of financial crimes, and in 2010, Van Gasken and Hartshorn formed SEE and Eastern Property, the plaintiffs in this case, to which they transferred the management of the trust properties from Gill Companies.

SEE's executive officers were Van Gasken and Hartshorn.  The office manager was Marlene Blossfield (who had also been the manager at Gill Companies).  SEE's management duties included collecting rent payments from tenants.  Tenants would make their rent checks payable to Eastern Property, SEE's payment entity, and Blossfield would deposit the checks into Eastern Property's

---

[1] At trial, Gill testified that he was also a trustee of the real estate holding trusts.

bank account.  Hartshorn would then transfer funds from Eastern Property's account to SEE's operating account.  Hartshorn would also, in his capacity as GFCT's trustee, transfer funds to GFCT.

On June 8, 2011, Gill entered the plaintiffs' offices in Columbus, Georgia. Gill stated that he was a trustee of the real estate holding trusts, he was taking over the management of Eastern Property and SEE, and any employees who did not follow his instructions would be fired.  Gill went on to tell Blossfield that Hartshorn and Van Gasken had been terminated and that she was prohibited from contacting them.  To prevent Hartshorn and Van Gasken from entering Eastern Property and SEE's offices, Gill posted security guards at the doors and changed the locks and key codes.

Gill also told Blossfield to get Alabama business licenses in the names of Eastern Property Development and South East Enterprise, LLC.  Gill used these Alabama licenses to open a new bank account in the name of Eastern Property Development.  After Gill ordered the plaintiffs' employees to stop depositing tenants' rent checks into the plaintiffs' bank account, Gill deposited the rent checks into the new bank account.

On June 15, 2011, the plaintiffs filed suit against Gill in district court.  Their amended complaint alleged state law claims for trespass, conversion, interference with contract and prospective business advantage, and a federal Lanham Act claim.

4

The plaintiffs sought injunctive relief, compensatory damages, and punitive damages.

Two days later, Gill fired Blossfield.  Soon after, he sent a letter from "South Eastern Enterprise Group, LLC" to the plaintiffs' tenants, instructing them to deliver rent payments to a new mailing address.[2]

The plaintiffs filed a motion for a preliminary injunction against Gill.   After an evidentiary hearing, the district court granted the injunction on June 28, 2011.  In its injunction order, the district court required Gill to vacate the plaintiffs' business premises, remove the security guards, reset the locks and key codes, return any checks payable to the plaintiffs that Gill had deposited into his new bank account, and refrain from holding himself out as or acting for the plaintiffs.

On August 24, 2011, and in violation of the injunction, Gill sent a letter to the plaintiffs' tenants, declaring that the plaintiffs had been terminated and were no longer the management company for the trust properties.  The letter instructed the tenants to ignore all communications from Blossfield and her staff, to cease delivering rent payments to the plaintiffs' office or mailing address, and to send all rent payments to a different mailing address.  The next day, Gill sent a second letter to the tenants, notifying them that the prior letter was sent in error and should

---

[2] The Alabama clerk's clerical error caused a license to issue in the name of "South Eastern Enterprise Group, LLC" rather than "South East Enterprise Group, LLC."

be disregarded.   Gill's letters created confusion and concern among the tenants, which took the plaintiffs some time to rectify.

On August 15, 2012, the district court held a pretrial conference.  There, Gill's counsel raised a question regarding the right to open and conclude closing argument at trial if Gill were to make a plea of justification under Georgia law. When the district court stated that, in federal court, the plaintiffs would still have the right to open and conclude the closing argument, Gill's counsel announced that they would not make the plea.

Just before trial, Gill conceded liability on the state law claims of trespass, conversion, interference with contracts and business advantage, and the case proceeded to trial on the issues of compensatory and punitive damages on the state law tort claims, as well as liability and damages on the federal Lanham Act claim.

After the close of evidence, the district court granted Gill's motion for directed verdict on the Lanham Act claim, and the case went to the jury on compensatory and punitive damages for the state law tort claims. The jury returned a verdict in favor of the plaintiffs, awarding $35,335.98 in compensatory damages and $250,000.00 in punitive damages.

Following trial, Gill moved to reduce the punitive damages award, arguing that it was unconstitutionally excessive.  The district court denied the motion, finding that: (1) there was a legitimate state interest in punishing and deterring

6

Gill's conduct; (2) the evidence at trial—that Gill "busted into [the] plaintiffs' offices, took over their operations, disrupted their business, and interfered with their employees and tenants"—supported the jury's conclusion that his conduct was sufficiently reprehensible to warrant the amount of punitive damages awarded; and (3) the 7:1 ratio of punitive to compensatory damages was warranted, because the actual damages were mitigated by the district court's preliminary injunction order (notwithstanding Gill's violation of that injunction on one occasion) and understated the egregiousness of Gill's conduct.  (Dkt. 139.)  Gill appeals, challenging the punitive damages award and the order of closing argument at trial.

## III.  STANDARDS OF REVIEW

We review the propriety of punitive damages *de novo*.  Myers v. Cent. Fla. Invs., Inc., 592 F.3d 1201, 1212 (11th Cir. 2010).  We review the constitutionality of punitive damages *de novo*, but the district court's findings of fact for clear error. Action Marine, Inc. v. Cont'l Carbon Inc., 481 F.3d 1302, 1309 (11th Cir. 2007). We review the district court's determination regarding the right to open and conclude at closing argument for abuse of discretion.  See Martin v. Chesebrough-Pond's, Inc., 614 F.2d 498, 501 (5th Cir. 1980) (per curiam) (finding no abuse of discretion in the district's decision regarding the order of closing argument).[3]

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

## IV.    DISCUSSION

### A.    Punitive Damages Under Georgia Law

Gill argues that no punitive damages should have been awarded under Georgia law because there was no evidence that he acted out of aggression or outrage or that his actions rose to the level of criminal or quasi-criminal conduct. Gill also contends the evidence is disputed as to whether he "burst" into the plaintiffs' offices to take over, lied about being a trustee, and had no other purpose but to "burn" down the business.

In Georgia, punitive damages may be awarded in tort actions when "clear and convincing evidence" proves a defendant's "actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).  Thus, a punitive damages award is supported if there is clear and convincing evidence that Gill's conduct was "so reckless or so charged with indifference to the consequences" as to show wantonness, Hendon v. DeKalb County, 417 S.E.2d 705, 712 (Ga. Ct. App. 1992) (internal quotation marks omitted), or that Gill acted with an "intentional disregard of the rights of another" as to show a conscious indifference to consequences, Tyler v. Lincoln, 527 S.E.2d 180, 182-83 (Ga. 2000).   A willful repetition of trespass or conversion can authorize a claim for punitive damages.  Id. at 183 (willful repetition of trespass);

8

Taylor v. Powertel, Inc., 551 S.E.2d 765, 768 (Ga. Ct. App. 2001) (willful repetition of conversion).

Here, there was clear and convincing evidence from which a jury could have concluded that Gill repeatedly acted with an intentional disregard for the plaintiffs' rights when he, among other things, trespassed onto the plaintiffs' business premises, took over their operations, fired their employees, and sent letters to their tenants to redirect rent payments to his new bank account. Although Gill disputes that he lied about being a trustee of the real estate holding trusts at the time of his misconduct, there was evidence from which the jury could have concluded otherwise.[4] Because there was clear and convincing evidence that Gill's misconduct showed the requisite bad state of mind under Georgia law, the district court did not err in allowing the jury's punitive damages award to stand.

## B.    Constitutionality of Punitive Damages

Gill argues that the punitive damages award violates the Due Process Clause of the Fourteenth Amendment because it is arbitrary and excessive. The Supreme Court provides the following guideposts when determining whether a punitive damages award is constitutionally excessive: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the punitive damages award

---

[4] For example, Van Gasken testified that Gill, knowing he was not a trustee of the real estate holding trusts, requested Van Gasken make him a trustee.

and the actual or potential harm suffered by the plaintiffs; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases.  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418, 123 S.Ct. 1513, 1520 (2003).

### 1.    Degree of Reprehensibility

The reprehensibility of the defendant's conduct is the most important indicator of the reasonableness of a punitive damages award.  Campbell, 538 U.S. at 419, 123 S.Ct. at 1521.  When assessing the degree of reprehensibility, we consider the following factors:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Id.

In its order denying Gill's motion to reduce the punitive damages award, the district court found that Gill's conduct was sufficiently reprehensible to warrant $250,000 in punitive damages because Gill "busted" into the plaintiffs' offices, took over their operations, disrupted their business, and interfered with their employees and tenants.  We find that the district court's findings of fact and conclusions regarding Gill's degree of reprehensibility are supported by the evidence and are therefore not clearly erroneous.  See Johansen v. Combustion

10

Eng'g, Inc., 170 F.3d 1320, 1335 (11th Cir. 1999) (a district court's finding regarding degree of reprehensibility is clearly erroneous if unsupported by the record or contrary to the evidence).

Gill argues that his actions constituted a single course of conduct, not repeated actions; however, we disagree. Gill entered the plaintiffs' business premises, changed the locks, obtained Alabama business licenses in the plaintiffs' names to open up a new bank account, deposited rent checks from the plaintiffs' tenants into that new account, fired the plaintiffs' employees, and sent letters redirecting rent payments away from the plaintiffs. He took each action without regard to his authority to do so and was undeterred by the prospect of litigation. Gill was similarly undeterred by the reality of litigation. After the district court issued a preliminary injunction order prohibiting Gill from continuing his actions, he nonetheless sent another letter to the plaintiffs' tenants, *again* redirecting the tenants' rent payments.

Gill also asserts that no evidence shows he acted with intentional malice, trickery, or deceit. As we have already discussed, there was evidence—clear and convincing evidence—from which a jury could have concluded that Gill acted with a bad state of mind.

Pointing to the jury's finding that he did not act with a specific intent to harm the plaintiffs, Gill argues that he did not act with intentional malice, trickery,

11

or deceit.[5]  This argument is not persuasive, however, because a finding of specific intent to harm is not necessary.  Gill next argues that because the district court never asked the jury to decide whether Gill was a trustee of the real estate trusts, the jury did not find he acted with trickery or deceit.  However, evidence of Gill's trustee status was before the jury in the form of testimony from witnesses, including Van Gasken.  Finally, Gill argues that even if the jury found that he was not candid about his trustee status with the plaintiffs' employees, his lack of candor pales in comparison to the frauds in other punitive damages cases.  However, the different facts presented by other cases have little influence on our determination in this case.  See Action Marine, 481 F.3d at 1320 ("We decline [defendant]'s invitation to compare its actions with those of other defendants in dissimilar contexts and base our conclusion on the facts before us in this case alone.").

Upon review of the record facts and evidence of this case, we cannot conclude that the district court clearly erred in finding that the degree of Gill's reprehensibility supported the amount of punitive damages awarded.

---

[5] The jury was instructed to determine whether Gill had a specific intent to harm in the event that the punitive damages award exceeded Georgia's punitive damages cap for tort actions.  O.C.G.A. § 51-12-5.1(f) and (g) (capping punitive damages at $250,000.00 unless the trier of fact finds the defendant acted with the specific intent to cause harm).  Because the jury's award did not exceed the cap, their determination ultimately was irrelevant under Georgia law.

### 2.    Difference Between Actual or Likely Damages and Punitive Damages

The ratio of punitive damages to compensatory damages is relevant but not dispositive.  Although the Supreme Court has noted that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety," it has repeatedly declined to impose a bright-line ratio that a punitive damages award cannot exceed.  Campbell, 538 U.S. at 425, 123 S.Ct. at 1524.   This is because the "award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff."  Id.

Here, the district court acknowledged that the 7:1 ratio of $250,000.00 in punitive damages to $35,335.98 in compensatory damages was higher than the 4:1 ratio endorsed by the Supreme Court, but concluded that the punitive damages award "was not so disproportionate to the amount of compensatory damages recovered that it must be reduced."  The district court found that the plaintiffs' compensatory damages were mitigated by the preliminary injunction—which prevented similar conduct during the pendency of the action—and that the amount of provable damages understated the egregiousness of Gill's conduct.  The evidence supports the district court's findings, and we agree that the facts and circumstances of Gill's misconduct and the potential harm to the defendants justifies the 7:1 ratio in this case.

### 3.    *Civil Penalties*

The disparity between the punitive damages award and the "civil penalties authorized or imposed in comparable cases" is accorded the least weight in the excessiveness analysis.  BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 116 S.Ct. 1589, 1598-99 (1996); see Kemp v. Am. Tel. & Tel. Co., 393 F.3d 1354, 1364 (11th Cir. 2004).  Gill argues that there is no relevant civil sanction under Georgia law.  However, even if no comparable civil penalties exist in this case, we think that the punitive damages award is sufficiently supported by the degree of reprehensibility of Gill's conduct.

## C.    <u>Order of Closing Argument at Trial</u>

Under Georgia law, a defendant who enters a plea of justification is statutorily provided the right to open and conclude closing argument:

> If the defendant in a tort action was authorized to do the act complained of, he may plead such authorization as justification. The effect of such plea is to admit that the act was done and to entitle the defendant to all the privileges of one holding the affirmative of the issue. Such plea, however, shall not give the defendant the right to open and conclude the argument before the jury unless it is filed before the plaintiff submits any evidence to the jury.

O.C.G.A. § 51-11-1.  Gill argues that he made a plea of justification and therefore should have had the right to open and conclude the closing argument.

The record shows Gill never actually made a plea of justification.  At the pretrial conference, Gill's counsel merely inquired into the consequences of

making a plea of justification and, when told by the district court that the plaintiffs would still have the right to open and conclude the closing argument, announced that Gill would not make the plea.  Gill concedes this fact.  See Reply Br. at 7.

Nonetheless, Gill appears to suggest that his later decision to admit liability on the state law claims entitled him to open and conclude the closing argument under § 51-11-1.  Even assuming without deciding that Gill's general concession to liability was sufficient,[6] the right to open and conclude argument is a procedural matter governed by federal law, see Lancaster v. Collins, 115 U.S. 222, 225, 6 S.Ct. 33, 34-35 (1885), which rests within the district court's discretion, see Martin, 614 F.2d at 501.

To the extent Gill attempts to reframe the right to open and conclude the closing argument as a substantive right belonging to the party with the burden of proof, he is mistaken.  See Lancaster, 115 U.S. at 225, 6 S. Ct. at 35 (holding that the order of argument "is purely a question of practice" that "does not affect the merits of the controversy" and rejecting the plaintiff's argument that the trial court erred by refusing the plaintiff's right to close at trial); see also May v. Int'l Loan &

---

[6] We are not persuaded that Gill's concession to liability under the circumstances of this case was a proper plea of justification under § 51-11-1.  Gill's general concession to liability did not admit "every material allegation which would authorize the plaintiff[s] to recover without proof on [their] part." Hodsdon v. Whitworth, 293 S.E.2d 70, 72 (Ga. Ct. App. 1982).  Further, the plaintiffs still had the burden to prove Gill's misconduct caused damages and the amount of damages.  Id. (finding "no proper plea of justification . . . so as to authorize the defendants to open and conclude" where "there was no admission of a prima facie case so as to authorize damages to the plaintiff").

15

Trust Co., 92 F. 445, 447 (5th Cir. 1899) ("[I]t is well settled that in the federal courts the question as to which party shall make the closing argument . . . is a matter which should be largely left to the discretion of the trial judge."); Martin, 614 F.2d at 501 (finding "no abuse of discretion in refusing [the co-defendant's] rebuttal"); Fernandez v. Corporacion Insular De Seguros, 79 F.3d 207, 210 (1st Cir. 1996) (citing Martin, 614 F.2d at 501) ("[t]he Martin court . . . reconfirmed that the decision to permit rebuttal is a procedural matter which rests within the sound discretion of the trial judge")).  We cannot conclude that the district court abused its discretion in allowing the plaintiffs to open and conclude the closing argument.

In any event, it is difficult to see how the denial of Gill's alleged right to open and conclude the closing argument is not a harmless error under Rule 61 of the Federal Rules of Civil Procedure, which requires that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."  Fed. R. Civ. P. 61; see also Martin, 614 F.2d at 501-02 (district court's decision regarding the order of argument was not inconsistent with substantial justice under Rule 61); May, 92 F. at 446 (defendant was not "injured, materially or otherwise, by the refusal of the trial judge to allow him to open and conclude").

**AFFIRMED.**

16